## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON M. KURLAND, | Civil Action No.: 2:21-CV-6440 |
| Plaintiff | **ORAL ARGUMENT REQUESTED** |
| v. | |
| FIREMAN'S FUND INSURANCE COMPANY, | |
| Defendant. | |

## NOTICE OF CROSS-MOTION FOR SUMMARY JUDGMENT
## ON BEHALF OF DEFENDANT

**PLEASE TAKE NOTICE** that defendant Fireman's Fund Insurance Company ("Fireman's Fund"), by and through its attorneys White and Williams LLP, upon a Memorandum of Law, Response to Plaintiff's Rule 56.1 Statement of Undisputed Material Facts, and the Declaration of Monica Doss, Esq., together with Exhibits 1 and 2 thereto, all arguments of counsel, as well as upon all of the prior papers and proceedings heretofore served and had herein, shall cross-move before the **Hon. Joan M. Azrack, Long Island Courthouse, 100 Federal Plaza, Central Islip, New York 11722**, on a date and time to be designated by the Court, for an Order granting Fireman's Fund summary judgment in favor of Fireman's Fund pursuant to Fed. R. Civ. P. 56 as to Counts I and II of the Complaint; and terminating this lawsuit.

Date: April 22, 2022

Respectfully submitted,
**WHITE AND WILLIAMS LLP**

BY: _____

Rafael Vergara, Esq.
Monica Doss, Esq.
7 Times Square, Suite 2900
New York, NY 10036-6524
(212) 244-9500
*Attorneys for Defendant, Fireman's Fund Insurance Company*

To:   Andrew N. Bourne
      Amber N. Morris
      Cohen Ziffer Frenchman & McKenna
      1350 Avenue of the Americas, 25th Floor
      New York, New York 10019
      (212) 584-1890
      *Attorneys for Plaintiff Jason M. Kurland*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON M. KURLAND, <br><br>　　　　　Plaintiff <br><br> v. <br><br> FIREMAN'S FUND INSURANCE COMPANY, <br><br>　　　　　Defendant. | Civil Action No.: 2:21-CV-6440 <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION**

White and Williams LLP
7 Times Square, Suite 2900
New York, New York 10036-6524
(212) 244-9500
*Attorneys for Defendant,*
*Fireman's Fund Insurance Company*

On the brief:
Rafael Vergara, Esq.
Monica Doss, Esq.

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................ 1

**STATEMENT OF FACTS** ...................................................................................... 2

**LEGAL STANDARD** ........................................................................................... 2

**ARGUMENT** ..................................................................................................... 3

**I.     FIREMAN'S FUND DOES NOT OWE A DUTY TO DEFEND PLAINTIFF** ........... 3

    A.     The Criminal Underlying Action Seeking Criminal Penalties is Not A "Claim" Covered by the Policy ................................................................................................ 4

    B.     The Underlying Action Does Not Seek "Damages" As Defined By The Policy............. 6

    C.     The Policy's Exclusionary Language Pertains to A "Claim" Under the Policy; Because There Has Been No Claim Under the Policy, The Exclusionary Language Is Irrelevant .......... 9

**II.    PUBLIC POLICY PRECLUDES INSURANCE COVERAGE TO PLAINTIFF FOR HIS ALLEGED CRIMINAL BEHAVIOR** ............................................................... 11

**III.   WITHOUT A "CLAIM" OR "DAMAGES," THE OTHER DEFINITIONS PLAINTIFF RELIES UPON ARE IRRELEVANT TO THE DISPOSITION OF THE MOTIONS** .......................................................................................... 12

**CONCLUSION** ................................................................................................. 12

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*,
    60 N.Y.2d 390 (1983) ...........................................................................................4

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999) ................................................................................3

*Consol. Edison Co. of N.Y. v Allstate Ins. Co.*,
    98 N.Y.2d 208 (N.Y. 2002) ................................................................................3

*GMAC v. Nationwide Ins. Co.*,
    4 N.Y.3d 451 (N.Y. 2005) ..................................................................................4

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*,
    391 F. Supp. 2d 541 (S.D. Tex. 2005) ...............................................................7

*Jacobson Family Invs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    2015 NY Slip Op 05273, 129 A.D.3d 556 (App. Div. 1st Dept. June 18, 2015) ...................10

*Jeffreys v. City of New York*,
    426, F. 3d 549, 553 (2d Cir. 2005) .....................................................................2

*Jones, Foster, Johnston & Stubbs, P.A. v. ProSight-Syndicate 1110 at Lloyd's*,
    680 F. App'x 793 (11th Cir. 2017) .....................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................3

*Platek v. Town of Hamburg*,
    24 N.Y.3d 688 (N.Y. 2015) ................................................................................3

*Raymond Corp. v. Nat'l Union Fire Ins. Co.*,
    5 N.Y.3d 157 (N.Y. 2005) ................................................................................10

*United States v. Brown*,
    744 F.2d 905 (2d Cir. 1984) ...............................................................................8

*United States v. Chierchio et al.*,
    No. 20 Cr. 306 (NGG) (E.D.N.Y) ............................................................... *passim*

*United States v. Contorinis*,
    692 F.3d 136 (2d Cir. 2012) ...............................................................................7

*United States v. Johnson*,
    378 F.3d 230 (2004) ............................................................................................8

*United States v. Torres*,
   703, F.3d 194, 203 (2d Cir. 2012)............................................................................7

**STATUTES**

18 U.S.C. §1343............................................................................................................5, 7

Title 18, U.S.C. §§1349 and 3551 et seq. ........................................................................5

18 U.S.C. §1956............................................................................................................5, 7

18 U.S.C. §1956(a)...........................................................................................................7

18 U.S.C. §3553(a)(2).......................................................................................................7

Fed. R. Civ. P. 56....................................................................................................2, 3, 12

Local Civil Rule 56.1........................................................................................................2

11 N.Y.C.R.R. §§262.0 and 262.5..................................................................................11

New York Ins. Law §1101...............................................................................................11

## PRELIMINARY STATEMENT

Defendant Fireman's Fund Insurance Company is entitled to summary judgment on the because it does not owe a duty to advance defense costs to Plaintiff for the criminal prosecution against him.  Accordingly, Plaintiff's motion for partial summary judgment should be denied and the cross-motion by Fireman's Fund for summary judgment ought to be granted.

Plaintiff seeks insurance coverage from Fireman's Fund for defense costs incurred in connection with *United States v. Chierchio et al.*, No. 20 Cr. 306 (NGG) (E.D.N.Y) (the "Underlying Action").  However, the insurance policy does not insure for Plaintiff's alleged criminal activity.

During a Policy Period from January 25, 2020 to January 25, 2021, Fireman's Fund provided a Lawyers Professional Liability Insurance Policy ("Policy") to Rivkin Radler, LLP, the law firm in which Plaintiff was an equity partner. That Policy provides insurance to an "Insured" for "Damages" from "Claims." Those three terms are defined in the Policy, and Plaintiff seeks to avoid the natural and reasonable meaning of those terms to conjure up insurance coverage.

On August 13, 2020, a grand jury indicted Plaintiff in the United States District Court for the Eastern District of New York for Conspiracy to Commit Wire Fraud, Wire Fraud, Honest Services Wire Fraud, Conspiracy to Commit Money Laundering, and Money Laundering. The government set forth Plaintiff's scheme—that Plaintiff, along with three other individuals, conspired to defraud Plaintiff's clients, resulting in $107 million in losses to the victims. According to the charges, Plaintiff, a self-proclaimed "Lottery Lawyer," purported to represent dozens of lottery winners nationally. The clients, which the government refers to as "Lottery Victims," each paid Plaintiff and his firm hundreds of thousands of dollars so that the Plaintiff could advise them

on how to invest their money. Allegedly, after gaining the Lottery Victims' trust, Plaintiff steered

his clients to invest in entities and business deals controlled and directed by his co-conspirators,

and received kickbacks in return. According to the charges, Plaintiff failed to disclose this to his

clients, then used the money to keep the scheme going and fund a lavish lifestyle.

While Plaintiff seeks coverage under the Policy to defend against these criminal

proceedings, the Policy simply does not provide that coverage. That is because these circumstances

do not constitute either a "Claim" or "Damages" under the Policy.  Both terms refer to non-criminal

proceedings, yet Plaintiff stretches both the policy definitions as well as the legal understanding

of these terms to attempt to make them fit into the criminal proceeding here. The Policy definitions

of Claim and Damages do not cover the Underlying Action. Further, Plaintiff argues that a Policy

exclusion adds meaning to the definition of Claim, but that is a legally incorrect assertion because

the exclusion cannot be utilized to manufacture coverage where there is none to begin with.

## STATEMENT OF FACTS

The Court is respectfully referred to Fireman's Fund's annexed Response to Plaintiff's

Statement of Undisputed Material Facts, pursuant to Local Civil Rule 56.1.

## LEGAL STANDARD

Summary judgment is appropriate when, as here, "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact

is "material" for these purposes when it "'might affect the outcome of the suit under the governing

law.'" *Jeffreys v. City of New York*, 426, F. 3d 549, 553 (2d Cir. 2005). A genuine issue of material

fact exists only if the record, when taken as a whole, could lead a reasonable trier of fact to find in

favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or showing that the materials cited do not establish the absence […] of a genuine dispute." Fed. R. Civ. P. 56(c)(1).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The burden is on the Plaintiff to establish coverage. "Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage." *Consol. Edison Co. of N.Y. v Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (N.Y. 2002); *see also Platek v. Town of Hamburg*, 24 N.Y.3d 688, 694 (N.Y. 2015) (although insurer has burden of proving applicability of exclusion, insured has burden to establish existence of coverage). Here, Plaintiff as the insured of Fireman's Fund, bears the burden to establish coverage. Plaintiff attempts to argue both that the Policy covers the Plaintiff's proceeding under its non-exclusionary language, then switches gears to argue that the Policy's exclusionary language also provides coverage in this case. However, the Policy is clear – there is no Claim for Damages in this case that the Policy covers. As such, no discussion about an exclusion is relevant. Plaintiff's failure to establish the existence of coverage should result in Fireman's Fund obtaining summary judgment on its cross-motion.

## ARGUMENT

## I.    FIREMAN'S FUND DOES NOT OWE A DUTY TO DEFEND PLAINTIFF

Plaintiff brought this action and summary judgment motion alleging that Fireman's Fund owes Plaintiff a duty to defend it in connection with the Underlying Action. *See* Complaint, Ex. 1. In its Answer and this Cross-Motion, Fireman's Fund maintains that Plaintiff is wrong – the Policy

does not cover Plaintiff for the Underlying Action. *See* Answer, Ex. 2. The Policy issued by Fireman's Fund sets forth:

> [Fireman's Fund] will pay on behalf of the Insured all sums which the **Insured** shall become legally obligated to pay as **Damages** for **Claims** first made against the **Insured** and reported to the **Company** during the **Policy Period** or Extended Reporting Period, as applicable, arising out of any . . . act, error, omission, or **Personal Injury** in the rendering of or failure to render **Professional Services** for others by an **Insured** covered under this policy.

Policy, Pl.'s Ex. 1 at § I; Change Endorsement no. 4.

Further, the Policy sets forth:

> [Fireman's Fund] shall have the right and duty to defend any suit against the **Insured** seeking **Damages** to which this insurance applies even if any of the allegations of the suit are groundless, false or fraudulent.

*Id.*

The Underlying Action is not a "Claim" covered under the Policy, nor does it seek "Damages" as defined by the Policy. Plaintiff argues that there is a Claim by misconstruing terms to appear like they apply in this criminal context. Yet, the criminal prosecution against Plaintiff does not constitute a "Claim" and the indictment does not seek "Damages." Seeing as the Policy does not cover Plaintiff's criminal proceedings, this is not a matter of a Policy exclusion but a lack of coverage under the Policy's definitions.

### A. The Criminal Underlying Action Seeking Criminal Penalties is Not A "Claim" Covered by the Policy

New York insurance contracts are construed in light of "common speech." *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983). Insurance contracts also must be interpreted "according to the reasonable expectation and purpose of the ordinary businessman

-4-

when making an ordinary business contract." *GMAC v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 457 (N.Y. 2005) (internal quotation marks and citations omitted). Plaintiff's arguments do the opposite—they try to force unnatural interpretations of ordinary words to try to make them fit into a criminal prosecution context that seeks criminal penalties. When considering the reasonable expectation and purpose of a professional legal liability insurance policy, there would be no expectation of insurance coverage for criminal activity.

The Policy promises to defend the insured only in the event of a Claim. The term Claim is defined in the Policy as

> a demand for money or services, or the filing of suit or institution of arbitration proceedings or alternative dispute resolution naming an **Insured** and alleging any . . . act, error, omission, or Personal Injury resulting from the rendering of or failure to render **Professional Services**. *Claim does not include proceedings seeking injunctive or other non-pecuniary relief.*

Policy, Pl.'s Ex. 1 at § VIII; Change Endorsement No. 4 (italics added).

Plaintiff's motion for summary judgment fails to address the specific aspect of the Policy's definition of Claim that precludes coverage for "proceedings seeking injunctive or other non-pecuniary relief"—which is precisely the nature of the criminal proceedings brought against Plaintiff. The United States Government's institution of criminal proceedings against Plaintiff seeks "non-pecuniary relief" that is barred from coverage. The Indictment and Detention Memorandum issued by the United States Attorney indicate that the government seeks a maximum sentence of "20 years on each count charge in the fraud scheme" relating to Plaintiff's alleged criminal actions. Detention Memo, Pl.'s Ex. 3 at p. 30.

Plaintiff was charged with conspiracy to commit wire fraud under Title 18, U.S.C. §§1349 and 3551 et seq., wire fraud under Title 18 U.S.C. §§1343, 2 and 3551 et seq., honest services wire

fraud under Title 18, U.S.C. §§1343, 1346 and 3551 et seq., conspiracy to commit money laundering under Title 18 U.S.C. §§1956(h) and 3551 et seq., and money laundering under Title 18 U.S.C. §§1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 2 and 3551 et seq. These charges primarily seek to punish the Plaintiff for his alleged illegal activity—to deprive him of his liberty. These charges do not primarily seek to "compensate." The Indictment and Detention Memo confirm the reason for the proceedings—the government seeks "20 years on each count charge in the fraud scheme" relating to Plaintiff's alleged criminal actions.

The charges set forth in the indictment against the Plaintiff, the statutes the charges are brought under, and the Detention Memorandum issued by the United States Attorney all unequivocally indicate that these proceedings are non-pecuniary. The criminal proceeding seeks relief—that is, an extended loss of liberty—that is clearly non-pecuniary in nature.

**B.  The Underlying Action Does Not Seek "Damages" As Defined By The Policy**

The Underlying Action does not seek Damages as that term is defined in the Policy. Although Plaintiff attempts to stretch both the Policy's definition of Damages and the legal concept of damages, Plaintiff's argument tries to fit a square peg in a round hole – forcing the penalties of a criminal indictment into the Policy's definition of Damages, which is:

> compensatory judgments, settlements, or awards *but does not include punitive or exemplary damages, sanctions, fines or penalties assessed directly against any Insured, the return of fees or other consideration paid to the Insured, or that portion of any award or judgment caused by the trebling or multiplication of actual damages under federal or state law.*

Policy, Pl.'s Ex. 1 at §VIII (emphasis added). Section II.B. of Plaintiff's motion for summary judgment leave out the majority of the definition, which specifically precludes the inclusion of

punitive or exemplary damages, sanctions, fines or penalties. Instead, Plaintiff tries to make forfeiture of ill-gotten and illegal gains sound like they are compensatory judgments. They are not.

The factors that a court would consider in sentencing the Plaintiff, were he to be convicted, require that an imposed sentence needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Title 18 U.S.C. §3553(a)(2). The statutes Plaintiff is charged under require that a person convicted be fined, imprisoned, or both[1].

The Indictment seeks forfeiture of "any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of [the] offenses" charged, or alternatively, "forfeiture of any other property of [Mr. Kurland and his co-defendants] up to the value of the forfeitable property[.]" Indictment, Pl.'s Ex. 2 at ¶¶10-11. The Second Circuit has set forth that "'[f]orfeiture'" is a word generally associated with a person's losing an entitlement as a penalty for certain conduct." *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012). In criminal proceedings, it "serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners." *Id.* (internal quotations omitted). The Second Circuit has observed that "[f]orfeiture of the instrumentalities and profits of crime is supposed to interfere with criminal activity and at the same time impose an economic sanction upon criminal and those who connive with them, thus deterring crime." *United States v. Torres*, 703, F.3d 194, 203 (2d Cir. 2012) (internal quotations omitted).

---

[1] Plaintiff was indicted for conspiracy to commit wire fraud, wire fraud, honest services wire fraud, conspiracy to commit money laundering, and money laundering. These indictments rely on 18 U.S.C. §1956(a) and 18 U.S.C. §1343, both of which require a sentence of a fine, imprisonment for not more than twenty years, or both. 18 U.S.C. §1956(a) sets forth that a person guilty of money laundering "shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both." 18 U.S.C. §1343 sets forth that a person guilty of wire fraud "shall be fined under this title or imprisoned not more than 20 years, or both."

Further, courts have found that some "liability policies do not cover costs for criminal actions, including attorney's fees, because criminal punishments do not seek damages that 'compensate' a party for injuries suffered" and because criminal punishments are not "damages[.]" *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 391 F. Supp. 2d 541, 570-71 (S.D. Tex. 2005). Additionally, in interpreting similar policy language to that at issue here, the U.S. Court of Appeals for the Eleventh Circuit observed that where defense obligations were triggered by "suit[s] against the Insured seeking Damages" and where "Damages" was defined to exclude sanctions or other penalties, "there is no question that the plain terms of the Policy relieve [the insurer] of any duty to defend against proceedings seeking monetary sanctions or non-pecuniary relief." *Jones, Foster, Johnston & Stubbs, P.A. v. ProSight-Syndicate 1110 at Lloyd's*, 680 F. App'x 793, 797-98 (11th Cir. 2017) (finding that the "[p]olicy makes crystal clear that only suits seeking 'compensatory judgments, settlements, or awards' trigger a duty to defend on the part of [the insurer] [...] '[b]ecause the contempt motion sought sanctions ... [rather than compensatory damages], [the insurer] did not have a duty to defend [the insured].'").

Although Plaintiff argues that "upon judgment in the government's favor, the Attorney General has the authority to dispose of the forfeited property by restoring it 'to any victim of the offense giving rise to the forfeiture,'" this is mere a statement of what the Attorney General **may** do with the forfeited funds. It does not define the purpose of the stated funds, nor does it set forth a necessary use for the forfeiture of the funds. It also does not negate the punitive nature of the forfeited funds – that a felon should not keep and profit from ill-gotten gains received illegally in the course of committing a crime. Plaintiff also argues that there are Damages here by misconstruing potential restitution as compensatory—yet, restitution is a punitive judicial vehicle under criminal law, which is expressly barred from coverage by the Policy's definition. *See, e.g.,*

*United States v. Johnson*, 378 F.3d 230, 244 (2004) ("a district court may – indeed, must – impose orders or restitution on defendants […] even if their victims decline restitution. To hold otherwise would […] undermine the power of the criminal justice system to punish defendants, where appropriate, through orders of restitution"); *United States v. Brown*, 744 F.2d 905, 909 (2d Cir. 1984) ("Restitution undoubtedly serves traditional purposes of punishment."). Ultimately, the forfeiture of money or property obtained illegally and restitution are vehicles of the punitive aspects of the criminal system, and are wholly outside the definition of Damages under the Policy.

As such, the Underlying Action does not seek Damages as that term is defined in the Policy. The Policy expressly covers only Damages for Claims, and as such, does not provide coverage for the Underlying Action.

### C. The Policy's Exclusionary Language Pertains to A "Claim" Under the Policy; Because There Has Been No Claim Under the Policy, The Exclusionary Language Is Irrelevant

Plaintiff argues that it is relevant that "Fireman's Fund included a carve out in the Policy's Conduct Exclusion related to defense costs for" criminal acts. (Pl.'s brief at 14.)  But insurance coverage cannot be created through an exclusion. Rather, insurance coverage has to exist first, and, if it exists, then you would examine whether an exclusion subtracts from the coverage.  Here, because no coverage exists, any language in the exclusions is irrelevant.

Exclusion B of the Policy sets forth that, "[t]his insurance does not apply to Claims […] [a]rising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation […]. Policy, Pl.'s Ex. 1, at § VIII (Exclusion B). But for the exclusion to apply under the clear language of the Policy, there must first be a Claim under the Policy's definitions. The Underlying Action does not satisfy the definition of a Claim. It is only **if** the Underlying

Action did satisfy the definition of Claim that it would be appropriate to analyze whether the exclusions to the Policy apply to that Claim, and thus require an analysis of the exclusion to reduce the scope of the coverage.

Thus, it is misleading for Plaintiff to assert that Fireman's Fund "*contractually committed to provide a defense for any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation.*" (Pl.'s brief, at 2.) (emphasis added). Plaintiff disregards and misconstrues the full language of the exclusion, which sets forth: "[t]his insurance does not apply to Claims [...] [a]rising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation [...]. Policy, Pl.'s Ex. 1, at § VIII (Exclusion B). Further, Plaintiff attempts to use the Policy's exclusion to create coverage where there is not. It is well-established that an insurance policy's exclusion cannot be used to create coverage. *Raymond Corp. v. Nat'l Union Fire Ins. Co.,* 5 N.Y.3d 157, 163 (N.Y. 2005) (holding that an exclusion from insurance coverage cannot create coverage); *see also Jacobson Family Ins., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2015 NY Slip Op 05273, ¶ 2, 129 A.D.3d 556, 558 (App. Div. 1st Dept. June 18, 2015) (holding "[e]xclusion clauses by their nature subtract from rather than grant coverage"). In *Raymond*, the court refused to find coverage on an insurance policy based on negative inferences from the policy's exclusions – which is what plaintiff relies on in his argument. The *Raymond* court emphasized the established basic principle that "exclusion clauses *subtract* from coverage rather than grant it. *Id.* (internal citations omitted) (emphasis in original). Thus, Plaintiff's attempt to find coverage under the Policy via the Policy's exclusion fails.

In this case, the Underlying Action does not even meet the definition of Claim. As such, an analysis as to what types of Claims would be excluded under the exclusionary language would be inappropriate.

## II. PUBLIC POLICY PRECLUDES INSURANCE COVERAGE TO PLAINTIFF FOR HIS ALLEGED CRIMINAL BEHAVIOR

Aside from the contract interpretation analysis, it would be against public policy to grant Plaintiff insurance coverage under his law firm's liability policy for alleged criminal behavior. Insurance policies are not typically designed for that purpose. Providing insurance coverage for allege criminal behavior would arguably incentivize the bad behavior that the criminal justice system in this country seeks to prevent. At their core, insurance policies are meant to protect people from the worst day they did not expect, not to insulate people from the consequences of the bad acts they willfully committed. Allowing for a reading of this Policy to include criminal proceedings that were not contemplated in the Policy's definitions would poorly incentivize insurance policyholders.

Notably, under 11 New York Codes, Rule and Regulations ("N.Y.C.R.R.") §262.5, "[n]o policy of legal services insurance may provide defense coverage in a criminal proceeding[.]" It is emphasized in 11 N.Y.C.R.R. 262.0(f) that "[t]his Part prohibits coverage in a criminal proceeding, except where the Legislature has expressly stated that the public policy of the state is to allow such coverage[.]" This regulatory scheme is consistent with the public policy that circumstances like Plaintiff's criminal proceeding are not covered by insurance.

Ordinarily, an insurance contract is designed to cover a "fortuitous event." New York Ins. Law §1101(a). A "'[f]ortuitous event' means any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent *beyond the control of either party.*" New York Ins. Law §1101(b) (emphasis added). The criminal proceedings against Plaintiff cannot reasonably be construed as alleging an occurrence that is fortuitous. Plaintiff was not indicted for alleged

criminal behavior that was beyond his control. In fact, all the criminal statutes Plaintiff was charged under require that the criminal activity was done with intent.

Accordingly, it is respectfully submitted that the contract interpretation urged by Plaintiff is incorrect from not only a legal analysis perspective, but also from the perspective of public policy.

**III.   WITHOUT A "CLAIM" OR "DAMAGES," THE OTHER DEFINITIONS PLAINTIFF RELIES UPON ARE IRRELEVANT TO THE DISPOSITION OF THE MOTIONS**

Plaintiff has arguments relating to the definitions of Insured, Personal Injury, Professional Services. (Pl.'s brief at 9-10, 14-16.)  These definitional issues arguments are irrelevant in light of the nonexistence of a Claim or Damages.  Without a Claim or Damages, no insurance coverage is owed by Fireman's Fund with respect to the Underlying Action. *See* Policy, Pl.'s Ex. 1 at § I , and Change Endorsement no. 4. (stating that the "Company will pay" sums that the insured is obligated to pay as **Damages** for **Claims**.")

**CONCLUSION**

As a matter of law, Fireman's Fund does not owe insurance coverage to Plaintiff in relation to the Underlying Action.  Fireman's Fund should be awarded summary judgment under Fed. R. Civ. P. 56. Accordingly, Plaintiff's motion for summary judgment under count I should be denied, and the cross-motion by Fireman's Fund for summary judgment should be granted.

Date: April 22, 2022

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

BY: _____

Rafael Vergara, Esq.
Monica Doss, Esq.
7 Times Square, Suite 2900
New York, NY 10036-6524
(212) 244-9500
*Attorneys for Defendant, Fireman's Fund Insurance Company*

-13-

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON M. KURLAND, | Civil Action No.: 2:21-CV-6440 |
| Plaintiff | |
| v. | |
| FIREMAN'S FUND INSURANCE COMPANY, | |
| Defendant. | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.1 STATEMENT OF MATERIAL FACTS

Pursuant to Local Civil Rule 56.1, defendant Fireman's Fund Insurance Company ("Fireman's Fund") respectfully submits the following Response to Plaintiff's Rule 56.1 Statement of Material Facts:

1. Admit.

2. Admit.

3. Admit.

4. Deny. The Policy speaks for itself. Plaintiff's statement pieces together various parts of the policy in a vague misstatement of the Policy.

5. Deny. See Item 4.

6. Deny. See Item 4.

7. Deny. See Item 4.

8.  Deny. See Item 4.

9.  Deny. See Item 4.

10. Deny. See Item 4.

11. Deny. See Item 4.

12. Admit.

13. Admit.

14. Deny. The Indictment speaks for itself. Plaintiff's statement pieces together various parts of the Indictment in a vague misstatement of the Indictment.

15. Deny. See Item 14.

16. Admit.

17. Admit.

18. Deny. The Detention Memo speaks for itself. Plaintiff's statement pieces together various parts of the Detention Memo in a vague misstatement of the Indictment.

19. Admit.

20. Deny. See Item 18.

21. Deny. See Item 18.

22. Admit.

28753181v.1

23. Admit.

24. Admit.

25. Admit.

26. Admit.

27. Admit.

28. Admit.

29. Admit.

Date: April 22, 2022       Respectfully submitted,
**WHITE AND WILLIAMS LLP**

BY: _____

Rafael Vergara, Esq.
Monica Doss, Esq.
7 Times Square, Suite 2900
New York, NY 10036-6524
(212) 244-9500
*Attorneys for Defendant, Fireman's Fund Insurance Company*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON M. KURLAND, | Civil Action No.: 2:21-CV-6440 |
| Plaintiff, | |
| v. | |
| FIREMAN'S FUND INSURANCE COMPANY, | |
| Defendant. | |

## <u>DECLARATION</u>

Monica Doss, pursuant to 28 U.S.C. § 1746, hereby declares:

1.  I am an associate at the law firm of White and Williams LLP, counsel for Defendant Fireman's Fund Insurance Company ("Fireman's Fund") in the above-captioned case. I am an attorney duly admitted to practice law in the State of New York and before this Court. I submit this declaration in support of Fireman's Fund's Cross-Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1.

2.  Annexed hereto as Exhibit 1 is a true and correct copy of Plaintiff's Complaint in the instant matter, which was filed on November 18, 2021 under the docket as document no. 1.

3.  Annexed hereto as Exhibit 2 is a true and correct copy of Fireman's Fund's Answer in the instant matter, which was filed on January 24, 2022 under the docket as document no. 11.

I declare under the penalty of perjury that the foregoing is true and correct.

Date: April 22, 2022          **WHITE AND WILLIAMS LLP**

BY: _____

          Monica Doss, Esq.
          7 Times Square, Suite 2900
          New York, NY 10036-6524
          (212) 244-9500
          *Attorneys for Defendant, Fireman's Fund Insurance
          Company*



# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JASON M. KURLAND<br><br>Plaintiff,<br><br>- against –<br><br>FIREMAN'S FUND INSURANCE COMPANY<br><br>Defendant. | Civil Action No. 9:21-cv-6440<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Jason M. Kurland ("Mr. Kurland" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendant Fireman's Fund Insurance Company ("Fireman's Fund" or "Defendant"). In support thereof, Mr. Kurland alleges as follows:

## NATURE OF ACTION

1.      This is an insurance coverage action arising out of Fireman's Fund's wrongful refusal to provide insurance coverage to Mr. Kurland. Specifically, through this Action, Mr. Kurland seeks to recover damages and related declaratory relief arising out of Fireman's Fund's repudiation of its obligation to advance defense costs under an insurance policy benefiting Mr. Kurland.

2.      In exchange for a substantial premium, Fireman's Fund issued $10,000,000 in lawyers' professional liability insurance (the "Policy") to Rivkin Radler, LLP ("Rivkin Radler" or the "Firm"), a New York law firm where Mr. Kurland formerly served as an equity partner. The insurance policy sold by Fireman's Fund required Fireman's Fund to advance the costs incurred

1

by Mr. Kurland defending against a "**Claim**."[1]  In August 2020, Mr. Kurland was indicted by a grand jury in a 21-count indictment (the "Indictment").[2]  Mr. Kurland expressly denies the allegations in the Underlying Action.

3.      Mr. Kurland promptly notified Fireman's Fund of the Underlying Action and requested that Fireman's Fund advance the costs incurred by Mr. Kurland in defending himself in the Underlying Action upon exhaustion of the relevant self-insured retention.  To date, Fireman's Fund has refused to advance such costs.  Fireman's Fund's failure to do so constitutes a breach of contract.

4.      Fireman's Fund's refusal to effectuate its obligations under the Policy to provide Mr. Kurland with defense coverage on a current basis (as is his right under the Policy) has left Mr. Kurland alone to face criminal allegations and mounting defense fees, while simultaneously now requiring him to incur the significant added expense of pursuing this coverage claim.

5.      Accordingly, Mr. Kurland now brings this action for breach of contract and declaratory relief, seeking compensatory damages equivalent to the defense costs he has thus far incurred in relation to the Underlying Action, and a declaration by the Court that, going forward, Mr. Kurland's defense costs must be fully covered and paid so that he can mount his defense to the Underlying Action specifically guaranteed to him under the Policy.

## PARTIES AND RELEVANT NON-PARTIES

6.      Plaintiff Jason M. Kurland is an individual domiciled in New York.  Mr. Kurland is a former equity partner of the Firm, where he worked until 2020, and is insured by the Policy.

---

[1] Terms in bold are defined in the Policy.

[2] The underlying case is captioned *United States v. Chierchio et al.*, No. 20 Cr. 306 (E.D.N.Y.) (the "Underlying Action").

7. Upon information and belief, Defendant Fireman's Fund is an insurance company incorporated under the laws of California with its principal place of business in Illinois and which is authorized to transact, and actually transacts, business in the State of New York.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties to the action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. The Court has specific personal jurisdiction over this action because Fireman's Fund purposefully availed itself of the laws of New York through the issuance of the Policy at issue to the Firm, a New York limited liability partnership.

10. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because the substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### A. The Policy

11. In exchange for a substantial premium, Fireman's Fund issued the Firm a "Professional Liability Insurance Policy," No. USFF006011200, effective for the period January 25, 2020, through January 25, 2021. *See* Ex. A at Declarations Page.

12. The Policy provides a Limit of Liability of $10,000,000 for each **Claim** and $20,000,000 in the aggregate, subject to a $500,000 deductible per claim as a self-insured retention.[3] *See id.*; Self-Insured Retention Endorsement.

---

[3] Mr. Kurland has satisfied the self-insured retention.

13.     Pursuant to the Self-Insured Retention Endorsement, Fireman's Fund agreed to "assume the right and duty to defend [Mr. Kurland] . . . even if any of the charges of the **Claim** are groundless, false or fraudulent." *Id.* at Self-Insured Retention Endorsement.

14.     The basic insuring agreement of the Policy, as amended by Endorsement Nos. 4 and 7, as well as the Self-Insured Retention Endorsement, provides:

> [Fireman's Fund] will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages** for **Claims** first made against the **Insured** and reported to [Fireman's Fund] during the **Policy Period** or Extended Reporting Period, as applicable, arising out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** for others by an **Insured** covered under this policy.

*Id.* § I; Endorsement Nos. 4 & 7; Self-Insured Retention Endorsement.

15.     The Policy, as amended by Endorsement No. 4, defines "**Claim**" to mean "a demand for money or services, or the filing of suit or institution of arbitration proceedings or alternative dispute resolution naming an **Insured** and alleging a[n] act, error, omission or **Personal Injury** resulting from the rendering of or failure to render **Professional Services**.  **Claim** does not include proceedings seeking injunctive or other non-pecuniary relief." *Id.* § VIII; Endorsement No. 4.

16.     The Policy defines "**Damages**" to mean "compensatory judgments, settlements or awards but does not include punitive or exemplary damages, sanctions, fines or penalties assessed directly against any **Insured**, the return of fees or other consideration paid to the **Insured**, or that portion of any award or judgment caused by the trebling or multiplication of actual damages under federal or state law." *Id.* § VIII.

17.     The Policy defines an "**Insured**" as "any person or organization qualifying as an **Insured** in the 'Persons Insured' provision[.]" *Id.*  "**Persons Insured**" include, among others:

A. The entity or person named in Item 1 of the Declarations as the **Named Insured**;

B. Any Predecessor in Business or Successor in Business; [and]

C. *Any past partners*, officers, directors, stockholders or employees of any person or entity specified in item A. or B. above . . ., but only while acting within the scope of their duties on behalf of such person or entity[.]"

*Id.* § II.A-C (emphasis added).

18. Mr. Kurland is an **Insured** under the Policy because he is a past partner of the **Named Insured**, the Firm and acted within the scope of his duties with respect to the matters alleged in the Underlying Action.

19. The Policy defines "**Professional Services**," in relevant part, as:

services performed or advice given by the **Insured** in the **Named Insured's** practice as a law firm or legal professional; . . .

\*\*\*

(c) services as a trustee, administrator, conservator, executor, guardian, receiver, or similar fiduciary capacity; . . . [and]

\*\*\*

(f) services performed by the Insured in a lawyer-client relationship on behalf of one or more clients shall be deemed for the purpose of this section to be the performance of **Professional Services** for others in the **Insured's** capacity as a lawyer, although such services could be performed wholly or in part by non-lawyers.

*Id.* § VII(a), (c), (f).

**B. <u>The Underlying Action</u>**[4]

---

[4] The following factual allegations are taken from the Indictment, as well as a letter filed by the government on August 18, 2020 seeking permanent orders of detention against Mr. Kurland and his co-defendants (the "Detention Memo"). By reciting the facts herein, Mr. Kurland does not in any way admit the veracity of the criminal allegations, and, in fact, disputes all underlying charges and expressly denies all wrongdoing.

20. During Mr. Kurland's tenure as an equity partner, he was retained by several lottery winners to render his professional legal services on behalf of the Firm (the "Lottery Clients"). In exchange for Mr. Kurland's services, the Lottery Clients made both upfront and monthly payments to the Firm.

21. On or about August 13, 2020, a grand jury indicted Mr. Kurland in the United States District Court for the Eastern District of New York on 16 counts related to conspiracy to commit wire fraud, wire fraud, honest services wire fraud, conspiracy to commit money laundering, and money laundering. *See* Ex. B. The grand jury also indicted several other individuals as Mr. Kurland's alleged co-conspirators and co-defendants in the Underlying Action (collectively with Mr. Kurland, the "Underlying Defendants"). *See id.*

22. The government contends that the Underlying Defendants conspired to defraud the Lottery Clients of their winnings. The Indictment also alleges, in part, that Mr. Kurland "ow[ed] a duty of honest services to the Lottery [Clients]" as their attorney that he violated. Ex. B ¶ 3; *see also* Ex. C at 1. The government also avers that Mr. Kurland's actions occurred between March 2018 and August 2020, *see* Ex. B, during which time he was an equity partner at the Firm. *See* Ex. C at 2.

23. Upon conviction, the government seeks forfeiture of "any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of [the alleged] offenses[.]" Ex. B ¶ 10. In addition, Mr. Kurland faces the potential for court-ordered restitution to the alleged victims if convicted.

24. Mr. Kurland denies all allegations against him in the Underlying Action.

**C.** **Fireman's Fund Wrongfully Denies Coverage**

25. On or about August 31, 2020, Mr. Kurland provided Fireman's Fund with notice of Underlying Action.

26.     On or about October 12, 2020, Fireman's Fund informed Mr. Kurland via letter that coverage was not available to him based on the mistaken premise that the Policy's insuring agreement was not triggered.  In this regard, Fireman's Fund denied coverage by asserting that Underlying Action is not "a **Claim** for **Damages**," as those terms are defined by the Policy.

27.     Fireman's Fund's denial of coverage directly contravenes the Policy's definitions of "**Claim**" and "**Damages**," defined above.  The Underlying Action constitutes a "**Claim**" for "**Damages**" arising from the rendering of "**Professional Services**."

28.     Indeed, the Underlying Action is a suit naming an **Insured**; the Underlying Action alleges an act, error, omission or **Personal Injury**; the alleged act, error, omission or **Personal Injury** resulted from the rendering or failure to render **Professional Services**; and the Underlying Action is not a proceeding seeking an injunction or other non-pecuniary relief.

29.     Moreover, the Underlying Action seeks criminal forfeiture and restitution, which constitute **Damages**.

30.     Accordingly, the Indictment triggered the Policy's insuring agreement, and Fireman's Fund is contractually obligated to advance defense costs Mr. Kurland has incurred, and continues to incur, in relation to the Underlying Action.

### FIRST CAUSE OF ACTION
### (Breach of Contract – Duty to Advance Defense Costs)

31.     Mr. Kurland repeats and re-alleges the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein, except as they may be inconsistent with the specific allegations contained in this First Cause of Action.

32.     The Policy constitutes a valid and enforceable contract in which Mr. Kurland has a lawful interest.

33.     Mr. Kurland is insured under the Policy and has satisfied the applicable self-insured retention.

34.     Pursuant to the Policy, the Underlying Action, including the Indictment and Detention Memo, constitutes a covered **Claim** for **Damages** committed before the expiration of the **Policy Period**, and together these allegations constitute a single **Claim** arising from the same acts, errors, omissions or **Personal Injury** in the rendering of or failure to render **Professional Services** for others.

35.     Pursuant to the Policy, Mr. Kurland is entitled to the advancement of defense costs, including fees and expenses, he has incurred, and continues to incur, in relation to the Underlying Action.

36.     Mr. Kurland gave Fireman's Fund timely notice of the **Claim** under the Policy.

37.     Mr. Kurland made a demand for coverage, in writing, including for payment on a current basis of his fees and expenses incurred in the Underlying Action.

38.     Mr. Kurland has fully complied with all terms, conditions, and prerequisites to coverage set forth in the Policy, or has been excused from compliance with such terms, conditions, or prerequisites as a result of Fireman's Fund's breaches and/or other conduct.

39.     Mr. Kurland has sustained, and is continuing to sustain, a substantial amount of fees and expenses in defense of the Underlying Action, including the Indictment and Detention Memo, which Fireman's Fund is obligated to cover and/or reimburse on a current basis under the Policy.

40.     Fireman's Fund has materially breached, and actively continues to materially breach, its obligations under the Policy on a current basis.

41.     As a result of this material and continuing breach, Mr. Kurland has suffered damages and will continue to suffer damages in an amount greater than $75,000 to be determined in this action at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## SECOND CAUSE OF ACTION
### (Declaratory Relief)

42.     Mr. Kurland repeats and re-alleges the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein, except as they may be inconsistent with the specific allegations contained in this Second Cause of Action.

43.     The Policy is a valid and enforceable contract under which Mr. Kurland has a lawful interest.

44.     Mr. Kurland is insured under the Policy and has satisfied the applicable self-insured retention.

45.     Pursuant to the terms of the Policy, and subject to the applicable $500,000 self-insured retention, Fireman's Fund must pay up to $10,000,000 incurred by or on behalf of Mr. Kurland resulting from a **Claim** for **Damages** committed before the expiration of the **Policy Period**.

46.     Pursuant to the terms of the Policy, a **Claim** is defined as "a demand for money or services, or the filing of suit or institution of arbitration proceedings or alternative dispute resolution naming an **Insured** and alleging a[n] act, error, omission or **Personal Injury** resulting from the rendering of or failure to render **Professional Services**.  **Claim** does not include proceedings seeking injunctive or other non-pecuniary relief."

47.     Pursuant to the terms of the Policy, "**Damages**" are defined as "compensatory judgments, settlements or awards but does not include punitive or exemplary damages, sanctions,

fines or penalties assessed directly against any **Insured**, the return of fees or other consideration paid to the **Insured**, or that portion of any award or judgment caused by the trebling or multiplication of actual damages under federal or state law."

48. Pursuant to the terms of the Policy, the Underlying Action constitutes a **Claim** for **Damages** sought before the expiration of the **Policy Period**, and together these allegations constitute a single **Claim** arising from the same acts, errors, omissions or **Personal Injury** in the rendering of or failure to render **Professional Services** for others.

49. Mr. Kurland gave timely notice to Fireman's Fund of the Underlying Action.

50. Mr. Kurland made a demand for coverage, in writing, including for payment on a current basis of his fees and expenses incurred in the Underlying Action.

51. Mr. Kurland has fully complied with all terms, conditions, and prerequisites to coverage set forth in the Policy, or has been excused from compliance with such terms, conditions, or prerequisites as a result of Fireman's Fund's breaches and/or other conduct.

52. Mr. Kurland has sustained, and is continuing to sustain, a substantial amount of fees and expenses in defense of the Underlying Action, including the Indictment and Detention Memo, which Fireman's Fund is obligated to cover and/or reimburse on a current basis under the Policy.

53. Fireman's Fund's obligation to pay Mr. Kurland's defense costs and fees related to the Underlying Action is not exempted by any exclusion in the Policy.

54. Fireman's Fund unreasonably disputes the nature and full extent of its defense and indemnity obligations under the Policy and has failed to fulfill its obligation to pay any of Mr. Kurland's defense costs and fees related to the Underlying Action.

55.    The controversy between Mr. Kurland and Fireman's Fund is thus ripe for judicial decision.  Antagonistic claims are present between the parties concerning Mr. Kurland's rights and Fireman's Fund's obligations under the Policy respecting defense and indemnity coverage associated with the Underlying Action, and particularly the Indictment, and inevitable litigation will ensue.

56.    The issuance of declaratory relief by this Court in favor of Mr. Kurland and against Fireman's Fund in this single action will resolve this controversy and prevent redundant litigation and judicial inefficiency.

57.    Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment in favor of Mr. Kurland and against Fireman's Fund, declaring that coverage is available for Mr. Kurland up to the full limit of the Policy and, pursuant to 28 U.S.C. § 2202, declaring any other relief this Court deems proper.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Kurland prays for relief as follows:

(i)    On the First Cause of Action, Mr. Kurland requests that the Court enter an order and judgment in his favor and against Fireman's Fund awarding Mr. Kurland: (1) compensatory and consequential damages in an amount greater than $75,000 to be determined in this action or (2) in the alternative, grant injunctive relief requiring Fireman's Fund to pay defense fees and expenses, as well as any future fees and expenses up to the applicable limit of liability, incurred in relation to the Underlying Action; (3) pre- and post-judgment interest on the amount of the judgment; (4) and any other further relief as in law and justice he is entitled to receive;

(ii) On the Second Cause of Action, Mr. Kurland requests that the Court enter an order and judgment in his favor and against Fireman's Fund declaring that: (1) the Underlying Action, including the Indictment and Detention Memo, constitutes a **Claim** for **Damages** under the Policy;

(2) Mr. Kurland's defense costs and fees incurred in connection with the Underlying Action are recoverable under the Policy; (3) Mr. Kurland is entitled to future and current advancements of his defense costs and fees associated with the Underlying Action; (4) the Indictment alleges a **Claim** for **Damages** arising from the rendering of **Professional Services**; (5) the Policy obligates Fireman's Fund to pay Mr. Kurland's defense fees and expenses incurred in connection with the Underlying Action on a current basis, including for the Indictment, subject only to the Policy's respective attachment points and limit of liability; (6) Mr. Kurland is entitled to pre- and post-judgment interest on the amount of the judgment; and (7) Mr. Kurland is entitled to any such other and further relief as in law and justice that the Court deems appropriate;

(iii)     For all Causes of Action, Mr. Kurland asks the Court award him all pre-judgment and post-judgment interest as allowed by law and all of Mr. Kurland's costs and expenses incurred as a consequence of having to prosecute this lawsuit, including attorneys' fees;

(iv)     For all Causes of Action, Mr. Kurland requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Kurland hereby demands a trial by jury on all issues so triable.

Dated: November 18, 2021
    New York, New York

Respectfully submitted,

**COHEN ZIFFER FRENCHMAN & MCKENNA LLP**

By:  _/s/ Andrew N. Bourne_

Andrew N. Bourne (No. 4172003)
abourne@cohenziffer.com
Amber N. Morris (*pro hac vice* forthcoming)
amorris@cohenziffer.com
1350 Avenue of the Americas
25th Floor
New York, New York 10019

*Attorneys for Plaintiff Jason M. Kurland*



# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON M. KURLAND,<br><br>                              Plaintiff<br><br>              v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>                              Defendant. | Case no. 2:21-CV-6440<br><br><br>**ANSWER** |

Defendant Fireman's Fund Insurance Company ("Fireman's Fund"), hereby answers the complaint, dated November 18, 2021 (ECF 1).

**<u>Answer to "Nature of Action"</u>**

1.      The averments set forth in paragraph 1 consist of conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

2.      Fireman's Fund is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents. Fireman's Fund denies all of paragraph 2's allegations regarding the definition of "Claim."

3.      Fireman's Fund denies the allegations set forth in paragraph 3, and further avers that any denial of coverage was made in accordance with the policy's definitions and language.

4.      Fireman's Fund denies the allegations set forth in paragraph 4, and further avers that any denial of coverage was made in accordance with the policy's definitions and language.

5.      The averments set forth in paragraph 5 do not require a response. To the extent a response is required, Fireman's Fund denies the allegations set forth in paragraph 5.

### Answer to "Parties And Relevant Non-Parties"

6.      Fireman's Fund is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.

7.      Fireman's Fund admits the allegations set forth in paragraph 7.

### Answer to "Jurisdiction and Venue"

8.      The averments set forth in paragraph 8 consist of conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

9.      The averments set forth in paragraph 9 consist of conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

10.     The averments set forth in paragraph 10 consist of conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

### Answer to "Factual Background"

11.     Fireman's Fund denies the allegations set forth in paragraph 11, but admits having issued an insurance policy bearing policy number USF00601120 with a policy period of January 25, 2020 to January 25, 2021.

12.     Fireman's Fund denies the allegations set forth in paragraph 12, but avers that any definitions and endorsements set forth in any policy issued by Fireman's Fund can be found in the policy documents.

13.     Fireman's Fund denies the allegations set forth in paragraph 13, but avers that any definitions and endorsements set forth in any policy issued by Fireman's Fund can be found in the policy documents.

28328751v.1

14.     Fireman's Fund denies the allegations set forth in paragraph 14, but avers that any definitions and endorsements set forth in any policy issued by Fireman's Fund can be found in the policy documents.

15.     Fireman's Fund denies the allegations set forth in paragraph 15, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents.

16.     Fireman's Fund denies the allegations set forth in paragraph 16, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents.

17.     Fireman's Fund denies the allegations set forth in paragraph 17, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents.

18.     Fireman's Fund denies the allegations set forth in paragraph 18, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents. Fireman's Fund denies all of paragraph 18's allegations regarding the definitions of "Insured" and "Named Insured."

19.     Fireman's Fund denies the allegations set forth in paragraph 19, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents.

20.     Fireman's Fund is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20.

21.    Fireman's Fund is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21.  Nevertheless, Fireman's Fund admits being aware of an insurance claim in which it is alleged that Plaintiff was indicted.

22.    Fireman's Fund is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22.

23.    Fireman's Fund is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23.

24.    Fireman's Fund is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24.

25.    Fireman's Fund denies the allegations set forth in paragraph 25.

26.    Fireman's Fund denies the allegations set forth in paragraph 26, and further avers that any denial of coverage was made in accordance with the Policy's definitions and language.

27.    Fireman's Fund denies the allegations set forth in paragraph 27, and further avers that any denial of coverage was made in accordance with the Policy's definitions and language.

28.    Fireman's Fund denies the allegations set forth in paragraph 28.

29.    Fireman's Fund denies the allegations set forth in paragraph 29.

30.    Fireman's Fund denies the allegations set forth in paragraph 30.

### Answer to "First Cause of Action"

31.    Fireman's Fund denies the allegations set forth in paragraph 31.

32.    Fireman's Fund denies the allegations set forth in paragraph 32.

33.    Fireman's Fund denies the allegations set forth in paragraph 33.

34.    Fireman's Fund denies the allegations set forth in paragraph 34.

35.    Fireman's Fund denies the allegations set forth in paragraph 35.

36.     Fireman's Fund denies the allegations set forth in paragraph 36.

37.     Fireman's Fund denies the allegations set forth in paragraph 37.

38.     Fireman's Fund denies the allegations set forth in paragraph 38.

39.     Fireman's Fund denies the allegations set forth in paragraph 39.

40.     Fireman's Fund denies the allegations set forth in paragraph 40.

41.     Fireman's Fund denies the allegations set forth in paragraph 41.

## Answer to "Second Cause of Action"

42.     Fireman's Fund repeats its answers and further denies any allegations set forth in paragraph 42.

43.     Fireman's Fund denies the allegations set forth in paragraph 43.

44.     Fireman's Fund denies the allegations set forth in paragraph 44 and further avers that any denial of coverage was made in accordance with the policy's definitions and language.

45.     Fireman's Fund denies the allegations set forth in paragraph 45.

46.     Fireman's Fund denies the allegations set forth in paragraph 46, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents.

47.     Fireman's Fund denies the allegations set forth in paragraph 47, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents.

48.     Fireman's Fund denies the allegations set forth in paragraph 48, but avers that any definitions set forth in the relevant policy issued by Fireman's Fund can be found in the policy documents.

49.     Fireman's Fund denies the allegations set forth in paragraph 49.

50.     Fireman's Fund denies the allegations set forth in paragraph 50.

51.     Fireman's Fund denies the allegations set forth in paragraph 51.

52.     Fireman's Fund denies the allegations set forth in paragraph 52.

53.     Fireman's Fund denies the allegations set forth in paragraph 53.

54.     Fireman's Fund denies the allegations set forth in paragraph 54.

55.     The averments set forth in paragraph 55 consist of conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

56.     The averments set forth in paragraph 56 consist of conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

57.     The averments set forth in paragraph 57 consist of conclusions of law to which no response is required. To the extent a response is required, the allegations are denied and Fireman's Fund demands that Plaintiff's claims against it be dismissed, and further demands judgment in its favor, including costs, fees, and attorney's fees otherwise available under the law, and any other relief that the Court may deem just and proper.

## **Affirmative Defenses**

58.     The complaint fails to state a cause of action upon which relief can be granted.

59.     Plaintiff failed to mitigate damages.

60.     Plaintiff is not covered under the relevant insurance policy.

61.     Plaintiff is subject to a policy exclusion from coverage for the allegations contained within the Complaint.

62.     The criminal action involving Plaintiff does not constitute a Claim for purposes of the relevant insurance policy.

28328751v.1

63.     The criminal action involving Plaintiff does not seek Damages for purposes of the relevant insurance policy.

64.     The criminal action involving Plaintiff does not involve Professional Services for purposes of the relevant insurance policy.

65.     The defenses presented in a letter of October 12, 2020 from Allianz to Telemachus P. Kasulis of Morvillo Abramowitz Grand Iason & Anello P.C.

66.     The defenses presented in a letter of October 4, 2021 from Clyde & Co to Andrew N. Bourne, Esq. of Cohen Ziffer Frenchman & McKenna.

67.     Plaintiff does not qualify as an Insured, in particular because he may not have been acting within the scope of his duties on behalf of Rivkin Radler.

68.     Exclusion B of the relevant policy may exclude coverage.

69.     Exclusion B of the relevant policy may be applicable because the criminal action involving Plaintiff arises out of alleged dishonest, fraudulent, criminal and malicious acts and deliberate misrepresentations by Plaintiff.

70.     Exclusion A of the relevant policy may exclude coverage.

71.     Exclusion D of the relevant policy may exclude coverage.

72.     Exclusion G of the relevant policy may exclude coverage.

73.     Waiver.

74.     Estoppel.

75.     Plaintiff failed to comply with a condition of timely notice of a claim, which may limit or preclude insurance coverage.

76.     Plaintiff failed to provide information relevant to the insurance claim in a timely manner.

28328751v.1

77.     Plaintiff's damages are limited because of a delay in notifying Defendant of a claim or potential claim.

78.     Statute of limitations.

79.     Any injuries or damages sustained by the Plaintiff were caused by or contributed to by the negligence, lack of care, or culpable conduct of Plaintiff. Plaintiff's damages, if any, should be diminished in proportion to which the negligence, lack of care, or culpable conduct attributable to Plaintiff bears to the culpable conduct that caused the damages.

**WHEREFORE**, Fireman's Fund demands that Plaintiff's claims against it be dismissed, and further demands judgment in its favor, including costs, fees, and attorney's fees otherwise available under the law, and any other relief that the Court may deem just and proper.


Date: January 24, 2022                              Respectfully submitted,

                                                    s/Rafael Vergara
                                                    Rafael Vergara, Esq.
                                                    Monica Doss, Esq.
                                                    White and Williams LLP
                                                    7 Times Square, Suite 2900
                                                    New York, New York 10036
                                                    (212) 244-9500
                                                    vergarar@whiteandwilliams.com
                                                    dossm@whiteandwilliams.com
                                                    *Attorneys for defendant Fireman's Fund*
                                                    *Insurance Company*