# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON M. KURLAND<br><br>*Plaintiff*,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY<br><br>*Defendant*. | Civil Action No. 2:21-CV-06440 (JMA) (SIL)<br><br>**ORAL ARGUMENT REQUESTED** |

### PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT

**COHEN ZIFFER FRENCHMAN & MCKENNA LLP**

Andrew N. Bourne (No. 4172003)
abourne@cohenziffer.com
Amber N. Morris (admitted *pro hac vice*)
amorris@cohenziffer.com
1350 Avenue of the Americas
New York, New York 10019
P: (212) 584-1890
F: (212) 584-1891

*Attorneys for Plaintiff Jason M. Kurland*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.     THE POLICY OBLIGATES FIREMAN'S FUND TO DEFEND MR. KURLAND IN CRIMINAL AND CIVIL PROCEEDINGS..........................................................3

    II.    FIREMAN'S FUND IGNORES BLACK-LETTER INSURANCE LAW TO SHRINK ITS COVERAGE OBLIGATIONS UNDER THE POLICY ......................7

        A.     The Underlying Action is a "Claim" as That Term is Defined in the Policy.........7

        B.     The Underlying Action Seeks "Damages" as That Term is Defined in the Policy..................................................................................................................10

    III.   NEW YORK PUBLIC POLICY DOES NOT PRECLUDE DEFENSE COSTS FOR CRIMINAL PROCEEDINGS ................................................................................13

CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Admiral Ins. Co. v. Weitz & Luxenberg, P.C.*,
    2002 WL 31409450 (S.D.N.Y. Oct. 24, 2022) ............................................................................6

*Benvenuto v. Taubman*,
    690 F. Supp. 149 (E.D.N.Y. 1988) ..........................................................................................14

*CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*,
    720 F.3d 71 (2d Cir. 2013) ............................................................................................7, 9, 12

*Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.*,
    926 N.E.2d 833 (Ill. App. Ct. 2010) .......................................................................................5, 6

*Cont'l Cas. Co. v. Jones*,
    2011 WL 3880963 (D.S.C. Sept. 2, 2011) ...............................................................................5, 6

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*,
    754 F.3d 136 (2d Cir. 2014) .................................................................................................11, 12

*Fabozzi v. Lexington Ins. Co.*,
    639 F. App'x 758 (2d Cir. 2016) ................................................................................................4

*Fed. Ins. Co. v. Am. Home Assurance Co.*,
    639 F.3d 557 (2d Cir. 2011) .......................................................................................................7

*First Mercury Ins. Co. v. Schwartz*,
    2019 WL 2053850 (E.D.N.Y. Mar. 1, 2019) ..............................................................................6

*Matter of Fortement Ass'n, Inc.*,
    60 A.D.2d 614 (2d Dep't 1977) ................................................................................................14

*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*,
    37 N.Y.3d 552 (2021), *reargument denied*, 37 N.Y.3d 1228 (2022)
    ..................................................................................................................................7, 10, 11, 12

*Md. Cas. Co. v. Cont'l Cas. Co.*,
    332 F.3d 145 (2d Cir. 2003) .......................................................................................................12

*Matter of Mostow v. State Farm Ins. Co.*,
    88 N.Y.2d 321 (1996) .................................................................................................................4

*N.Y. Teamsters Council Prepaid Legal Services Plan v. Primo & Centra*,
    159 F.R.D. 386 (N.D.N.Y. 1995) ..............................................................................................14

*Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*,
    505 F.2d 989 (2d Cir. 1974)..................................................................................................4

*Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*,
    472 F.3d 33 (2d Cir. 2006)....................................................................................................7

*Quanta Lines Ins. Co. v. Investors Capital Corp.*,
    2009 WL 4884096 (S.D.N.Y. Dec. 17, 2009) .....................................................................4

*Schanker & Hochberg, P.C. v. Berkley Assurance Co.*,
    2022 WL 657540 (E.D.N.Y. Mar. 4, 2022)..........................................................................6

*U.S. Underwriters Ins. Co. v. Weatherization, Inc.*,
    21 F. Supp. 2d 318 (S.D.N.Y. 1998) ....................................................................................8

*United States v. Chierchio et al.*,
    No. 20 Cr. 306 (NGG) (E.D.N.Y. 2020)........................................................................9, 13

*United States v. Kalish*,
    626 F.3d 165 (2d Cir. 2010)..............................................................................................8, 9

*United States v. Seabrook*,
    661 F. App'x 84 (2d Cir. 2016) .............................................................................................8

*United States v. Stevenson*,
    834 F.3d 80 (2d Cir. 2016)....................................................................................................8

*United States v. Torres*,
    703 F.3d 194 (2d Cir. 2012)..................................................................................................8

*United States v. Uddin*,
    551 F.3d 176 (2d Cir. 2009)..................................................................................................8

*Wohlforth v. Am. Cas. Co. of Reading, Pa.*,
    2018 WL 3962933 (D. Conn. Aug. 18, 2018) ..................................................................5, 6

*Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*,
    547 F. Supp. 3d 381 (S.D.N.Y. 2021)...................................................................................8

*Zurich Ins. Co. v. Shearson Lehman Hutton*,
    84 N.Y.2d 309 (1994) ...................................................................................................10, 11

**Statutes**

18 U.S.C. 981...............................................................................................................8, 11, 12

18 U.S.C. § 1343..................................................................................................................12

18 U.S.C. § 3553..................................................................................................................12

18 U.S.C. § 3663A ...................................................................................................................9, 12

18 U.S.C. § 3571 ...........................................................................................................................12

21 U.S.C. § 853 ......................................................................................................................11, 12

28 U.S.C. § 2461 .............................................................................................................................8

N.Y. Ins. Law § 1113 ....................................................................................................................14

N.Y. Ins. Law § 1116 ....................................................................................................................14

## Other Authorities

11 N.Y.C.R.R. § 262.0 ..................................................................................................................13

11 N.Y.C.R.R. § 262.1 ..................................................................................................................14

11 N.Y.C.R.R. § 262.5 ..................................................................................................................13

Mr. Kurland[1] submits this Reply Memorandum in further support of Plaintiff's Motion for Partial Summary Judgment on Count I of the Complaint (the "Motion"). For the following reasons, Mr. Kurland respectfully requests that this Court grant his Motion and deny Fireman's Fund's cross-motion for summary judgment in its entirety ("Cross-Motion" or "Cross-Mot.").

## PRELIMINARY STATEMENT

Basic principles of New York law dictate that Fireman's Fund cannot avoid its broad defense obligations to Mr. Kurland. Faced with this irrefutable fact, Fireman's Fund attempts to rewrite the Policy and compounds its error by assuming Mr. Kurland's guilt, despite his continuous and emphatic assertion of innocence. Fireman's Fund's arguments ring hollow and should be rejected for several reasons.

First, the Policy does not contain the words that Fireman's Fund insists are present. In this regard, Fireman's Fund claims that the Policy does not cover criminal proceedings, despite the fact that the Policy does not include any such restriction on coverage. In fact, Fireman's Fund had at its disposal specific policy provisions that clearly and unambiguously preclude coverage for criminal proceedings. Yet, Fireman's Fund failed to include any such provisions into the Policy. Instead, it added a safe harbor provision that bars ultimate indemnity coverage for criminal conduct but *unequivocally* carves out an obligation for Fireman's Fund to "provide a defense" for "dishonest, fraudulent, criminal, or malicious" acts "*until such time* as the act is ruled either by trial verdict, court ruling, regulatory ruling, or legal admission as dishonest, fraudulent, criminal, or malicious[.]" Ex. 1 at § VII(B) (emphasis added). Such a final adjudication indisputably has not occurred in the Underlying Action. Rather, Mr. Kurland is set to defend his innocence in in

---

[1] Capitalized terms not otherwise defined herein are ascribed the same meanings as provided in the Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment on Count I of the Complaint (the "Opening Memorandum" or "Opening Memo").

less than three months in July 2022. Accordingly, the plain language of the Policy leads to one conclusion: Fireman's Fund is obligated to defend Mr. Kurland unless and until he is adjudicated guilty.

Second, Fireman's Fund incorrectly states that the Underlying Action does not constitute a **Claim** for **Damages**. In arguing that the Underlying Action is not a **Claim** because the government seeks non-pecuniary relief in the form of imprisonment, Fireman's Fund ignores that the government also seeks pecuniary relief in the form of forfeiture and restitution. The forfeiture sought in the Underlying Action is inherently pecuniary in nature, as the government seeks "*any* property, real or personal, *constituting or derived from, proceeds* obtained directly or indirectly as a result of [the] offenses" charged. Ex. 2 ¶ 10 (emphasis added). This property can take any myriad form of monetary relief. In fact, the government has already seized certain bank accounts of Mr. Kurland's in the event he is eventually adjudicated guilty. Similarly, financial restitution will be mandatory in the event Mr. Kurland is convicted at trial. Thus, Fireman's Fund disregards a basic precept of insurance coverage law that if *any* of the underlying claims are arguably covered under a policy, the insurer must provide a defense for the *entire* action.

Fireman's Fund further errs by arguing that the Underlying Action does not seek **Damages** because forfeiture is punitive in nature. But this position ignores black-letter insurance law that requires insurance contracts to be read under the cannons of interpretation applicable in the *insurance context*. Instead, Fireman's Fund reads the Policy in a vacuum, failing to view the Policy from the perspective of a reasonable insured. The statutes cited in the portion of the Indictment seeking forfeiture are enlightening in this regard. According to these statutes, the Attorney General may restore the forfeited property to the alleged victims, thus underscoring the remedial and compensatory nature of this relief. Fireman's Fund simply has no answer on the question of

2

restitution, which is expressly designed to be compensatory in nature. A reasonable understanding of the Policy in light of this framework demonstrates that relief is required as a matter of law.

Finally, Fireman's Fund misleadingly claims that New York public policy precludes defense costs for criminal proceedings. This is false. New York's Codes, Rules and Regulations only preclude defense costs for criminal proceedings for a specific type of insurance – namely, legal services insurance. But the Policy at issue in this case is a liability insurance policy. Legal services insurance, by contrast, is a specialized type of insurance that is only applicable in very limited circumstances, none of which apply here. The Policy does not contemplate this type of insurance or the regulations Fireman's Fund cites, despite incorporating other New York laws and regulations into the Policy as changes and/or amendatory endorsements. Thus, Fireman's Fund's public policy argument is unavailing and further demonstrates the feebleness of its substantive position.

Accordingly, Mr. Kurland respectfully requests that this Court grant him partial summary judgment on Count I of the Complaint and deny Fireman's Fund's Cross-Motion in its entirety.

## ARGUMENT

### I. THE POLICY OBLIGATES FIREMAN'S FUND TO DEFEND MR. KURLAND IN CRIMINAL AND CIVIL PROCEEDINGS

Fireman's Fund's opposition is based on the mistaken premise that the Policy does not cover criminal proceedings. *See* Cross-Mot. at 2, 4. Notably, however, the definitions of **Claim** and **Damages**, *as defined in this Policy*, are not limited to civil actions. Nor does any other portion of the Policy indicate such a restriction on coverage. These undisputed facts are fatal to Fireman's Fund's position.

Importantly, Fireman's Fund knew how to use the word "civil" and could have easily added that term to the definitions of **Claim** or **Damages** if that had been its intent. Under New York law,

3

a policy cannot be interpreted to include language that an insurer had available in the marketplace but chose to ignore. *See Matter of Mostow v. State Farm Ins. Co.*, 88 N.Y.2d 321, 327 (1996) (noting that an ambiguity in a policy "could have been avoided had the insurer simply drafted the policy to include" language provided by statute); *see also Fabozzi v. Lexington Ins. Co.*, 639 F. App'x 758, 762 (2d Cir. 2016) (explaining that the insurer "knows how to make itself plain" and "could have included similar language" to make the policy clearer). Fireman's Fund failed to include narrower language and may not now retroactively, under the guise of interpretation, add the term "civil" to the definitions of **Claim** or **Damages**, or read an exclusion for criminal proceedings into the Policy where none exists. *See Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1001 (2d Cir. 1974) (noting that when insurance companies fail to include clear and distinct language to exclude a cause of loss known in the market, "they acted at their peril"); *see also Fieldston Prop.*, 16 N.Y.3d at 264 ("If the plain language of the policy is determinative, we cannot rewrite the agreement by disregarding that language.").

In fact, Fireman's Fund could have defined **Claim** to exclude criminal proceedings just as other insurance companies have done in various policies. *See, e.g.*, *Quanta Lines Ins. Co. v. Investors Capital Corp.*, 2009 WL 4884096, at *2 (S.D.N.Y. Dec. 17, 2009) ("The definition [of a 'Claim'] specifically excludes '1. a demand for declaratory, injunctive or other nonmonetary relief [and] 2. *any form of criminal proceeding . . . .*" (emphasis added)). Fireman's Fund could have used any of the widely available language that excludes criminal proceedings from the definition of **Claim**. Having failed to do so, Fireman's Fund cannot now insist upon an interpretation that includes terms that Fireman's Fund chose to ignore.

Even beyond the definition of **Claim**, Fireman's Fund could have excluded criminal proceedings in the Policy through other simple provisions. For example, insurance policies can

4

contain blanket conduct exclusions to address this exact issue. *See, e.g.*, *Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.*, 926 N.E.2d 833, 845 (Ill. App. Ct. 2010) ("Criminal proceedings are not covered under this Policy regardless of the allegations made against the Insured[.]"); *Cont'l Cas. Co. v. Jones*, 2011 WL 3880963, at *2 (D.S.C. Sept. 2, 2011) ("Criminal proceedings are not covered under this Policy regardless of the allegations made against the Insured[.]"); *Wohlforth v. Am. Cas. Co. of Reading, Pa.*, 2018 WL 3962933, at *1-2 (D. Conn. Aug. 18, 2018) ("Criminal proceedings are not covered under this Policy regardless of the allegations made against an enrolled member.").

Fireman's Fund chose to do none of these things. Instead, the Conduct Exclusion utilized by Fireman's Fund says the opposite. In full, the Exclusion reads:

> This insurance does not apply to **Claims**: . . .
>
> B. Arising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation (including but not limited to, actual or alleged violations of state or federal antitrust, price-fixing, restraint of trade, copyright or deceptive trade practice laws, rules or regulations) committed by, at the direction of, or within the knowledge of any Insured; *however*, [Fireman's Fund] will provide a defense of such actions until such time as the act is ruled either by trial verdict, court ruling, regulatory ruling, or legal admission as dishonest, fraudulent, **criminal**, or malicious[.]

Ex. 1 at § VII(B) (emphasis added). It is not "misleading" for Mr. Kurland to assert that Fireman's Fund "*contractually committed* to provide a defense for any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation," as Fireman's Fund claims. Cross-Mot. at 10 (emphasis in original) (quoting Opening Memo. at 2). Mr. Kurland's reading of the Policy is faithful to its terms.

Fireman's Fund's parallel contention that Mr. Kurland's relies on the Conduct Exclusion to create coverage where none otherwise exists is a complete fabrication. *See* Cross-Mot. at 2-3, 9-10 (citations omitted). As set forth in Mr. Kurland's Opening Memorandum, the Underlying Action constitutes a **Claim** under the Policy. The Conduct Exclusion informs the common

5

understanding of the rest of the Policy and buttresses Mr. Kurland's position that Fireman's Fund is required to defend him unless and until a final adjudication of guilt. This is especially true given that a sophisticated repeat player in the insurance markets like Fireman's Fund had easily accessible language available if it truly wished to preclude coverage for criminal proceedings. *See, e.g.*, *Bertucci*, 926 N.E.2d at 845; *Jones*, 2011 WL 3880963, at *2; *Wohlforth*, 2018 WL 3962933, at *1-2. A carrier should not be allowed to collect premiums for years and then pretend it employed language that it could have bargained for at the time of signing.

Reading the Policy as a whole, Fireman's Fund is clearly obligated to defend Mr. Kurland for an underlying criminal action *unless and until* final judgment or admission. *See Admiral Ins. Co. v. Weitz & Luxenberg, P.C.*, 2002 WL 31409450, at *4 (S.D.N.Y. Oct. 24, 2022) (interpreting a substantially similar exclusion to imply that insurers are obligated to *defend* claims alleging dishonest, fraudulent, criminal or malicious acts, "even though [the insurer] need not pay damages for [such acts]" under the narrower duty to indemnify); *see also Schanker & Hochberg, P.C. v. Berkley Assurance Co.*, 2022 WL 657540, at * (E.D.N.Y. Mar. 4, 2022) (recognizing that a similar "safe harbor" provision in a conduct exclusion "resurrect[s] solely [the insurer's] duty to defend" until final adjudication, and not the insurer's narrower duty to indemnify); *First Mercury Ins. Co. v. Schwartz*, 2019 WL 2053850, at *15-16 (E.D.N.Y. Mar. 1, 2019) (interpreting a similar safe harbor provision and finding that the exclusion is "one limited to abrogating [the insurer's] *duty to indemnify* an insured for adjudicated claims," not the duty to defend unadjudicated allegations (emphasis added) (citations omitted)).

## II. FIREMAN'S FUND IGNORES BLACK-LETTER INSURANCE LAW TO SHIRK ITS COVERAGE OBLIGATIONS UNDER THE POLICY

### A. The Underlying Action is a "Claim" as That Term is Defined in the Policy

Fireman's Fund asserts that the Underlying Action is not a **Claim** because it seeks non-

6

pecuniary relief in the form of imprisonment.² *See* Cross-Motion at 5. It is undisputed that imprisonment is non-pecuniary relief. Unfortunately for Fireman's Fund, this argument ignores the other relief the government seeks in the Underlying Action. *See, e.g.*, *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013) ("[I]f *any* of the claims are covered by the policy, the insurer consequently has a duty to defend the *entire* action . . . including the uncovered claims." (emphasis added)).

The Policy does not define "pecuniary," and thus, the term must be afforded its "plain and ordinary meaning," which courts may ascertain by referring to dictionary definitions. *See, e.g.*, *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 567 (2d Cir. 2011) (citations omitted). "Pecuniary" is commonly defined as "consisting of or measured in money" and "of or relating to money[.]" *Pecuniary*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/pecuniary; *see also Pecuniary*, Black's Law Dictionary (11th ed. 2019) (defined as "[o]f, relating to, or consisting of money; monetary").

As explained in Mr. Kurland's Opening Memorandum, and as Fireman's Fund admits, *see* Cross-Motion at 7, the Underlying Action seeks forfeiture of "*any* property, real or personal, *constituting or derived from, proceeds* obtained directly or indirectly as a result of [the] offenses"

---

² The limiting language in the definition of **Claim** is exclusionary in nature, and thus, Fireman's Fund carries the heavy burden of proving that, when construed narrowly and in favor of coverage, the exclusionary language *unambiguously* applies to bar coverage. *See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42-43 (2d Cir. 2006) (citation omitted); *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 37 N.Y.3d 552, 562 (2021) (citations omitted), *reargument denied*, 37 N.Y.3d 1228 (2022). This is true regardless of where the exclusionary language appears in the policy. *See J.P. Morgan*, 37 N.Y.3d at 562 (explaining that limiting language in the definition of coverage should also be narrowly construed where "that limiting language functions as an exclusion") (citing *Planet Ins. Co. v. Bright Bay Class Vehicles*, 75 N.Y.2d 394, 400 (1991)). Fireman's Fund fails to fulfill this burden.

charged. Ex. 2 ¶ 10 (emphasis added) (citing 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)).[3] Although the government has preliminarily identified specific property to be forfeited, the government alternatively seeks "forfeiture of *any other property* of [Mr. Kurland and his co-defendants] up to the value of the forfeitable property[.]"[4] *Id.* ¶ 11 (emphasis added) (citing 18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853(p); 28 U.S.C. § 2461(c)).

It is beyond dispute that this "other property" can include a plethora of monetary interests. *See, e.g., Torres*, 703 F.3d at 199 (2d Cir. 2012) ("[C]ash is among the types of property subject to forfeiture under [Section 981]."); *United States v. Stevenson,* 834 F.3d 80, 86-88 (2d Cir. 2016) (contributions to or benefits of a pension plan are forfeitable); *United States v. Kalish*, 626 F.3d 165, 168-69 (2d Cir. 2010) (upholding forfeiture order of almost $4 million in cash); *United States v. Uddin*, 551 F.3d 176, 181 (2d Cir. 2009) (cash diverted from food stamp program is forfeitable). Moreover, the Second Circuit has held that Section 853 (governing criminal forfeiture) "permits imposition of a money judgment[.]" *Kalish*, 626 F.3d 168 (quoting *United States v. Awad*, 598 F.3d 76, 78 (2d Cir. 2010)).[5] The Indictment is replete with allegations that Mr. Kurland sought

---

[3] Section 981 is titled "Civil forfeiture," but it is made applicable to criminal cases by Section 2461. *See* 28 U.S.C. § 2461(c); *United States v. Seabrook*, 661 F. App'x 84, 86 (2d Cir. 2016) (citation omitted). Section 981 defines "proceeds" as "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B); *see also United States v. Torres*, 703 F.3d 194, 198 (2d Cir. 2012) (recognizing the breadth of the definition of "proceeds" under Section 981).

[4] New York law has long recognized that an insurer's duty to defend may be triggered by alternative allegations because a "defense obligation may be avoided only where there is no possible factual or legal basis on which an insurer's duty to indemnify under any provision of the policy could be held to attach." *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 393 (S.D.N.Y. 2021) (internal quotation marks omitted) (finding alternative theories of relief sufficient to trigger an insurer's duty to defend) (citing *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82-83 (2d Cir. 2006); *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)); *see also U.S. Underwriters Ins. Co. v. Weatherization, Inc.*, 21 F. Supp. 2d 318, 325 (S.D.N.Y. 1998) (finding an underlying complaint's "broad and alternative theories of negligence" against a policyholder sufficient to trigger the insurer's duty to defend).

[5] The Second Circuit's position is unanimously supported by the other circuits that have considered the issue. *See Kalish*, 626 F.3d 168-69 (citing *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006); *United States v. Vampire Nation*, 451 F.3d 189, 201-03 (3d Cir. 2006); *United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000); *United States v. Casey*, 444 F.3d 1071, 1077 (9th Cir. 2006)).

8

"to obtain money," and even includes two charts outlining dates on which he allegedly transferred funds between bank accounts. Ex. 2 ¶¶ 1-3. At bottom, each and every charge against Mr. Kurland relates to money. *See id.* ¶¶ 1-5. Indeed, the United States has already restrained bank accounts containing Mr. Kurland's money *so that it can forfeit them* in the event that he is convicted. *See United States v. Chierchio et al.*, No. 20 Cr. 306 (NGG) (E.D.N.Y. 2020) (Dkt. 127-2 at 18).

Furthermore, if Mr. Kurland is ultimately convicted on the fraud counts against him, he will be subject to a *mandatory* restitution order where any "identifiable victim or victims has suffered . . . *pecuniary* loss." 18 U.S.C. § 3663A (emphasis added) (requiring restitution for "an offense against property . . . including any offense committed by fraud or deceit"). In the Underlying Action, the government is claiming that Mr. Kurland's alleged victims incurred tens of millions of dollars in damages, which would ultimately be the subject of a restitution order after conviction. Fireman's Fund has no answer to Mr. Kurland's argument regarding restitution for the simple reason that there is none.

Fireman's Fund seeks to reduce the Underlying Action to only a claim for imprisonment. It is not. It is also a claim for pecuniary relief in the form of forfeiture and restitution. Fireman's Fund's argument therefore ignores a basic tenet of insurance law that "if *any* of the claims are covered by the policy, the insurer consequently has a duty to defend the *entire* action . . . including the uncovered claims." *CGS Indus.*, 720 F.3d at 83 (2d Cir. 2013) (internal quotation marks and citation omitted) (emphasis added).

### B.     The Underlying Action Seeks "Damages" as That Term is Defined in the Policy

Fireman's Fund also argues that the Underlying Action does not seek **Damages** because

9

forfeiture is punitive in nature.[6] Specifically, Fireman's Fund claims that the "forfeiture of ill-gotten and illegal gains" is not covered by the Policy because, in the criminal context, forfeiture is intended to punish. Cross-Mot. at 7. But Fireman's Fund overlooks that, less than six months ago, the New York Court of Appeals reiterated that New York law requires insurance policies to be interpreted in the *insurance context*, not according to other legal perspectives. *See J.P. Morgan*, 37 N.Y.3d at 564-69 (holding that SEC disgorgement did not constitute a "penalty" in the insurance context, despite the United States Supreme Court having found that SEC disgorgement is a penalty for federal statute of limitations purposes, and explaining that not all allegedly ill-gotten gains are *per se* uninsurable).

Although *J.P. Morgan* analyzed a disgorgement payment in the context of a settlement with the Securities and Exchange Commission, it is highly instructive as to what constitutes a "penalty" in the context of an insurance policy. The Court of Appeals explained that "a reasonable insured purchasing a wrongful act policy would expect an award or settlement payment that has compensatory purposes and is measured by an injured party's losses and third-party gains to fall within its coverage grant and, concomitantly, not be deemed a penalty." *Id.* at 564; *see also Zurich Ins. Co. v. Shearson Lehman Hutton*, 84 N.Y.2d 309, 316-17 (1994) (finding that an insurer was obligated to indemnify its insured in an underlying suit where the damages award was not solely punitive because the jury could have awarded the damages in question for either deterrence purposes or as additional compensation for the plaintiff's injury).[7] This is because the

---

[6] Like the limiting language in the definition of **Claim**, the limiting language in the definition of **Damages** also acts as an exclusion. Thus, Fireman's Fund also carries the heavy burden of proving that, when construed narrowly and in favor of coverage, the limiting language in the **Damages** definition *unambiguously* bars coverage. *See supra* note 2. Fireman's Fund fails to fulfill this burden.

[7] Notably, both *J.P. Morgan* and *Shearson Lehman* both discussed insurers' duty to indemnify after final adjudication or settlement. The duty to defend is much broader than the duty to indemnify. *See Euchner-USA, Inc. v. Hartford*

10

disgorgement payment "was calculated based on wrongfully obtained profits as a measure of the harm or damages caused by the alleged wrongdoing[.]" *J.P. Morgan*, 37 N.Y.3d at 565. The Court contrasted the disgorgement payment with a separate $90 million payment, which the Court found constituted a true "penalty" because it "was not derived from any estimate of harm or gain flowing from the improper [conduct]." *Id.*[8]

Forfeiture and restitution are expressly tied to the amount of a defendant's alleged gain and a victim's alleged loss. The government's demand for forfeiture in the Underlying Action is, in part, remedial and compensatory to the Lottery Clients, as it would be "calculated based on wrongfully obtained profits as a measure of the harm or damages caused by the alleged wrongdoing" and is thus not a penalty or other form of punitive damages. *See id.*; 18 U.S.C. 981(e)(6) (Attorney General may restore forfeited property "to any victim of the offense giving rise to the forfeiture"); 21 U.S.C. § 853(i)(1) (Attorney General may "restore forfeited property to victim"). In fact, the plain language of Section 853 states that the section must be "*liberally construed* to effectuate its *remedial purposes*." 21 U.S.C. § 853(o) (emphasis added). Similarly, the relevant federal restitution statute requires the "return of the property" to a victim of the offense or "an amount equal to . . . the value of the property." 18 U.S.C. § 3663A(b)(1).[9]

---

*Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (citing *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). Therefore, these cases further underscore that Fireman's Fund is obligated to, *at a minimum*, provide a defense to Mr. Kurland in the Underlying Action *unless and until final adjudication of guilt*. *Accord* Ex. 1 § VII(B) (the Conduct Exclusion).

[8] In this regard, Fireman's Fund's citation to out-of-circuit, non-New York cases, Cross-Mot. at 8, is irrelevant and inapposite, as these decisions contravene applicable New York law. Similarly, Fireman's Fund's citations to criminal law decisions (*id.* at 7, 9) – none of which involve insurance policies – run afoul of the ruling in *J.P. Morgan* because they fail to consider the questions presented in the relevant posture.

[9] That Fireman's Fund does not appreciate the centrality of restitution to this dispute is amply evident from its papers. For example, Fireman's Fund lists some of the factors relevant to a court's sentence from 18 U.S.C. § 3553 that do not relate to compensatory relief. *See* Cross-Mot. at 7 (sentencing court should consider "the seriousness of the offense," "promote respect for the law," and "provide just punishment"). But Fireman's Fund commits the cardinal sin of not reading the entire statute. A sentencing court must also consider "the need to provide restitution to any

11

The linchpin in the forfeiture analysis is Fireman's Fund's concession that the "Attorney General **may**" restore the forfeited property to the Lottery Clients (or any other alleged victims). Cross-Mot. at 8 (emphasis in original); *see also* 18 U.S.C. 981(e)(6); 21 U.S.C. § 853(i)(1). Although Fireman's Fund argues that no statute necessitates this action, it misses the point that the duty to defend is "exceedingly broad" and is triggered whenever "a reasonable possibility of coverage" arises. *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003); *Euchner-USA*, 754 F.3d at 140 (citation omitted). Thus, Fireman's Fund's concession as to how the Attorney General may act upon the forfeited property serves as an admission that Mr. Kurland is entitled to a defense in the Underlying Action unless and until final adjudication of guilt. And again, Fireman's Fund has no answer to the ineluctable fact that restitution is mandatory in the Underlying Action and is expressly and solely designed to compensate the alleged victims.[10]

Lastly, and most concerning, is Fireman's Fund's assertion that "a felon should not keep and profit from ill-gotten gains received illegally in the course of committing a crime." Cross-Mot. at 8. This statement presupposes that Mr. Kurland has been adjudicated guilty, which indisputably has not occurred. *See United States v. Chierchio et al.*, No. 20 Cr. 306 (NGG)

---

victims of the offense." 18 U.S.C. § 3553(a)(7). The inevitability of a mandatory restitution award to the sum of tens of millions of dollars in the event of conviction in the Underlying Action makes quite clear that the Underlying Action is, at least in part, a **Claim** for **Damages**.

[10] Moreover, the fact that the government could also separately seek imposition of a fine of up to $250,000, *see* 18 U.S.C. §§ 1343, 3571, further highlights the remedial purpose of the forfeiture and restitution sought in the Underlying Action. The government merely seeks to impose a compensatory remedy through its forfeiture and restitution powers, not exemplary damages, sanctions, fines or penalties. *See J.P. Morgan*, 37 N.Y.3d at 564 n.5 ("[T]he term 'penalty' in an insurance policy . . . must be given a narrow interpretation in accordance with the principles governing insurance contracts." (citing *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984))).

Nor does the relief sought constitute "fees or other consideration paid to" Mr. Kurland. Ex. 1 § VIII. The relief sought includes, among other things, the money the Lottery Clients invested, as well as any traceable monetary gain arising from the alleged activities. This money was not paid to Mr. Kurland as a fee or consideration in exchange for his services. Although the relief may include consideration, it also includes these other investments and gains. Thus, Fireman's Fund is obligated to defend the entire Underlying Action. *See, e.g.*, *CGS Indus.*, 720 F.3d at 83.

(E.D.N.Y.). That is, in a nutshell, the entire point of all of this. As explained in his Opening Memorandum, Mr. Kurland has continuously and emphatically denied all allegations against him and is set to defend his innocence at trial in less than three months. Opening Memo. at 2, 6, 14. Fireman's Fund's tacit suggestion that Mr. Kurland is a "felon" presumes guilt over innocence, offending the plain language of its own Policy[11] and the fundamental structure of this country's criminal justice system. The Conduct Exclusion protects Fireman's Fund if there is a final adjudication of guilt against Mr. Kurland. Until then, Fireman's Fund has a contractual, bargained-for duty to provide for his defense.

### III. NEW YORK PUBLIC POLICY DOES NOT PRECLUDE DEFENSE COSTS FOR CRIMINAL PROCEEDINGS

As a last-ditch effort, Fireman's Fund argues that public policy bars insurance coverage for criminal proceedings. Cross-Mot. 11-12. The *sole* authority Fireman's Fund cites for this remarkable proposition – which Fireman's Fund failed to raise in any previous correspondence with Mr. Kurland – is the New York Codes, Rules and Regulations regulating "legal services insurance." *See id.* at 11 (citing 11 N.Y.C.R.R. §§ 262.0(f), 262.5). However, this regulation is inapplicable because it governs a different type of insurance than what is at issue in this case.

New York authorizes and regulates numerous types of insurance. *See* 11 N.Y. Ins. § 1113. The regulations upon which Fireman's Fund relies relate to a specialized type of insurance called "legal services insurance." *See* Cross-Mot. at 11-12. Legal services insurance is defined under New York law as "insurance providing legal services or reimbursement of the cost of legal services." 11 N.Y.C.R.R. § 262.1(c); 11 N.Y. Ins. Law § 1113(a)(29). This distinct type of

---

[11] *See* Ex. 1 § VII(B) (the Conduct Exclusion).

13

insurance only arises in the specific context of prepaid legal services plans[12] or as part of a liability insurance policy under very limited circumstances.  *See* 11 N.Y. Ins. Law § 1116(a)(3).  Notably, *nothing* in the Policy contemplates prepaid legal services or legal services insurance.  *See generally* Ex. 1.  In fact, the Policy uses the phrase "legal services" only once and in the context of an entirely unrelated exclusion.  *See id.* at § VII(C).  And, pursuant to New York laws and regulations, the Policy incorporates specific changes and/or amendatory endorsements specific to New York – none of which include the regulations upon which Fireman's Fund relies.  *See id.* at 17, 25-28.[13]

Fireman's Fund's misleading reliance on an inapplicable regulation governing an esoteric form of insurance to suggest that New York public policy bars coverage for the Underlying Action demonstrates how far Fireman's Fund will grasp to support its contrived reading of the Policy.  Such an attempt should fail as a matter of law.

## **CONCLUSION**

For the aforementioned reasons, Mr. Kurland respectfully requests that this Court grant him partial summary judgment on Count I of the Complaint, deny Fireman's Fund's Cross-Motion in its entirety, find that Fireman's Fund breached its duty to defend Mr. Kurland in the Underlying Action, and order Fireman's Fund to immediately pay, on a current and continuing basis, defense costs incurred in the Underlying Action up to the Policy's liability limits.

Dated: April 29, 2022                                       Respectfully submitted,
      New York, New York

---

[12] Prepaid legal service plans are often included in group benefits packages to provide members with prepaid legal services in the event the members need personal legal services.  *See generally Benvenuto v. Taubman*, 690 F. Supp. 149 (E.D.N.Y. 1988); *N.Y. Teamsters Council Prepaid Legal Services Plan v. Primo & Centra*, 159 F.R.D. 386 (N.D.N.Y. 1995); *Matter of Fortement Ass'n, Inc.*, 60 A.D.2d 614 (2d Dep't 1977).

[13] Fireman's Fund fortuity argument also fails.  *See* Cross-Mot. at 11-12.  Indeed, it was fortuitous, or "beyond the control of either party," *see id.* at 11 (citations omitted), that Mr. Kurland would be indicted by the federal government, especially when viewed in the context of his denial of all allegations against him.  Fireman's Fund's continued presumption of guilt is unavailing.

14

**COHEN ZIFFER FRENCHMAN & MCKENNA LLP**

By: <u>*/s/ Andrew N. Bourne*</u>
Andrew N. Bourne (No. 4172003)
abourne@cohenziffer.com
Amber N. Morris (admitted *pro hac vice*)
amorris@cohenziffer.com
1350 Avenue of the Americas
New York, New York 10019
P: (212) 584-1890
F: (212) 584-1891

*Attorneys for Plaintiff Jason M. Kurland*