UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
JASON M. KURLAND,

                                        Plaintiff,

         -against-

FIREMAN'S FUND INSURANCE COMPANY,

                                        Defendant.
----------------------------------------------------------------------X

**ORDER**

2:21-CV-06440 (JMA) (SIL)

**AZRACK, United States District Judge:**

Before the Court are competing motions for summary judgment by Plaintiff Jason Kurland and Defendant Fireman's Fund Insurance Company ("Fireman's Fund"). Kurland moves for partial summary judgment and seeks a determination that, pursuant to a professional liability insurance policy issued to Kurland's former law firm (the "Policy"), Fireman's Fund must pay for his defense in an underlying criminal action, United States v. Chierchio, et al., No. 20-CR-306 (E.D.N.Y.) (the "Underlying Action"). Fireman's Fund cross-moves for summary judgment and asks the Court to hold that the Policy does not provide coverage to Kurland in connection with the Underlying Action. For the following reasons, Kurland's motion is granted, and Fireman's Fund's motion is denied.

## I. BACKGROUND

### A. The Insurance Policy

The parties do not dispute the central facts of this case. Kurland is a former equity partner at the law firm Rivkin Radler LLP. (Plaintiff's Rule 56.1 Statement, ECF No. 20 ("Pl.'s 56.1") at ¶ 1.) Fireman's Fund issued a "Lawyer's Professional Liability Claims-Made Insurance Policy" to Rivkin Radler effective for the period between January 25, 2020 and January 25, 2021 (the "Policy"). (Pl.'s 56.1 ¶ 2; Declaration of Andrew Bourne ("Bourne Decl."), Ex. 1, ECF No. 20.)

The Policy limits liability to $10,000,000 for each "Claim," and $20,000,000 in the aggregate, subject to a $500,000 self-insured retention. (Pl.'s 56.1 ¶ 3.) The Policy states that, "[u]pon exhaustion of the self-insured retention as respects any Claim," Fireman's Fund will "assume the right and duty to defend" any "Insured." (Pl.'s 56.1 ¶ 4.) The Policy provides that Fireman's Fund:

> [W]ill pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured and reported to the Company during the Policy Period or Extended Reporting Period, as applicable, arising out of any . . . act, error, omission, or Personal Injury in the rendering of or failure to render Professional Services for others by an Insured covered under this policy.

(Policy § I, Endorsement Nos. 4, 7, and Self-Insured Retention Endorsement.) The Policy further provides that Fireman's Fund:

> [S]hall have the right and duty to defend any suit against the Insured seeking Damages to which this insurance applies even if any of the allegations of the suit are groundless, false or fraudulent.

(Id. § I.) The Policy defines "Claim" to mean:

> [A] demand for money or services or the filing of suit or institution of arbitration proceedings or alternative dispute resolution naming an Insured and alleging a[n] act, error, omission or Personal Injury resulting from the rendering of or failure to render Professional Services. Claim does not include proceedings seeking injunctive or other non-pecuniary relief.

(Id. § VIII, Endorsement No. 4.) The Policy defines "Damages" as:

> [C]ompensatory judgments, settlements or awards but does not include punitive or exemplary damages, sanctions, fines or penalties assessed directly against any Insured, the return of fees or other consideration paid to the Insured, or that portion of any award or judgment caused by the trebling or multiplication of actual damages under federal or state law.

(Id. § VIII.) An "Insured" is "any person or organization qualifying as an Insured in the 'Persons Insured' provision." (Id.) "Persons Insured" include, among others, "[a]ny past partners . . . of [Rivkin Radler] . . ., but only while acting within the scope of their duties on behalf of [Rivkin Radler.]" (Id. § II.C.) Additionally, the Policy defines "Professional Services," in relevant part, as:

2

> (a) services performed or advice given by the Insured in [Rivkin Radler's] practice as a law firm or legal professional; . . .
>
> ***
>
> (c) services as a trustee, administrator, conservator, executor, guardian, receiver or similar fiduciary capacity; . . . [or]
>
> ***
>
> (f) services performed by the Insured in a lawyer-client relationship on behalf of one or more clients shall be deemed for the purpose of this section to be the performance of Professional Services for others in the Insured's capacity as a lawyer, although such services could be performed wholly or in part by non-lawyers.

(Id. § VIII(a), (c), (f).) Finally, the Policy sets forth several coverage exclusions. Of particular relevance here, the Policy states that, "[t]his insurance does not apply to Claims: . . .

> Arising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation (including but not limited to, actual or alleged violations of state or federal antitrust, price-fixing, restraint of trade, copyright or deceptive trade practice laws, rules or regulations) committed by, at the direction of, or with the knowledge of any Insured; however, [Fireman's Fund] will provide a defense of such actions until such time as the act is ruled either by trial verdict, court ruling, regulatory ruling, or legal admission as dishonest, fraudulent, criminal, or malicious[.]

(Id. § VII(B) (the "Claims Exclusion").)

### B.  The Underlying Action

On August 13, 2020, a federal grand jury indicted Kurland on multiple counts charging Conspiracy to Commit Wire Fraud, Wire Fraud, Honest Services Wire Fraud, Conspiracy to Commit Money Laundering, and Money Laundering. (Pl.'s 56.1 ¶ 13; see also United States v. Chierchio, et al., No. 20-CR-306 (E.D.N.Y.), ECF No. 1 (the "Indictment").) The Indictment alleged in part that, between October 2018 and August 2020, while Kurland was a Rivkin Radler partner, Kurland and his co-defendants conspired to defraud three of his clients—each a lottery winner—of their property and of their right to Kurland's honest services as their attorney. (Indictment at ¶¶ 1–3.) The Indictment also sought forfeiture by Kurland and his co-defendants of "any property, real or personal, constituting, or derived from, proceeds obtained directly or

3

indirectly as a result of" the charged fraud offenses, as well as "any property, real or personal" involved in the charged money laundering offenses. (Indictment at ¶¶ 10, 12.)

Kurland provided notice to Fireman's Fund of the Underlying Action on August 31, 2020. (Pl.'s 56.1 ¶ 23.) After Kurland confirmed that he sought coverage for legal fees and costs associated with the Underlying Action, Fireman's Fund denied coverage. (Id.; Bourne Decl., Ex. 4 at 1.) In an October 12, 2020 letter to Kurland, Fireman's Fund asserted that, coverage was not available to Kurland because "a Claim seeking Damages has not been made against Mr. Kurland." (Pl.'s 56.1 ¶ 24; Bourne Decl., Ex. 4 at 4.) Fireman's Fund further stated that it was not obligated to provide coverage because Kurland's "criminal conduct for [his] own benefit does not constitute an act, error, omission or Personal Injury in the rendering of or failure to render Professional Services for others." (Bourne Decl., Ex. 4 at 7.) Fireman's Fund also reserved its rights—in the event it was required to pay for Kurland's defense in the Underlying Action—to "seek to recover any such payments made from Mr. Kurland upon an adverse ruling against or an admission of guilt by Mr. Kurland." (Id. at 6 n.2.)

### C.  Procedural History

Kurland commenced this action on November 18, 2021. (See ECF No. 1.) Fireman's Fund answered the Complaint on January 24, 2022. (See ECF No. 11.) The parties' cross-motions for summary judgment were fully briefed on April 29, 2022. (See ECF Nos. 19, 20.)

On May 12, 2022, while the instant motions were pending before this Court, the Government filed a Superseding Indictment charging Kurland and a co-conspirator with Conspiracy to Commit Wire Fraud, Wire Fraud, Honest Services Wire Fraud, Conspiracy to Engage in Unlawful Monetary Transactions, and Unlawful Monetary Transactions. See United States v. Chierchio, et al., No. 20-CR-306 (E.D.N.Y.), ECF No. 170 (the "Superseding

4

Indictment"). The Superseding Indictment also seeks forfeiture from Kurland. (Superseding Indictment at ¶¶ 10–12).

On June 3, 2022, Kurland requested that the Court convert his pending motion for partial summary judgment to a motion for a preliminary injunction; Fireman's Fund opposed the request. (See ECF Nos. 24, 25.) The Court denied Kurland's request. (See Electronic Order dated June 15, 2022.)

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).[1] "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"The same standard of review applies when the court is faced with cross-motions for summary judgment." Clear Channel Outdoor, Inc. v. City of New York, 2009 WL 857068, at *12 (S.D.N.Y. Mar. 31, 2009) (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)). In evaluating cross-motions for summary judgment, "[e]ach party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion

---

[1] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

is under consideration." Id. (citing Morales, 249 F.3d at 121). However, "even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." Morales, 249 F.3d at 121.

**B.  Duty to Defend**

An insurer's duty to defend is "distinctly different" from its duty to indemnify. Allianz Ins. Co. v. Lerner, 416 F.3d 109, 117 (2d Cir. 2005). Under New York law,[2] the insurer has an "exceedingly broad" duty to defend the insured. Auto. Ins. Co. of Hartford v. Cook, 850 N.E.2d 1152 (N.Y. 2006). If the allegations in the underlying action "are even potentially within the language of the insurance policy, there is a duty to defend." CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 82–83 (2d Cir. 2013). Moreover, "if any of the claims are covered by the policy, the insurer consequently has a duty to defend the entire action . . . including the uncovered claims." Id. at 83. However, parties to an insurance contract may also "contract[ ] out of the common law rule that . . . there is no duty to defend claims that an insurer will not eventually have to indemnify." Admiral Ins. Co. v. Weitz & Luxenberg, P.C., No. 02-CV-2195, 2002 WL 31409450, at *4 n.2 (S.D.N.Y. Oct. 24, 2002).

In an insurance coverage dispute, "the insured bears the burden of showing that an insurance coverage covers the loss, but the insurer bears the burden of showing that an exclusion applies to exempt it from covering a claim." MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011). As a result, before an insurer is permitted to avoid coverage based on a policy exclusion, "it must satisfy the burden . . . of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." J.P. Morgan Sec. Inc. v. Vigilant Ins. Co., 183 N.E.3d 443, 448 (N.Y. 2021). "This standard may be implicated

---

[2] See Bluestein & Sander v. Chicago Ins. Co., 276 F.3d 119, 122 (2d Cir. 2002) ("The parties' briefs assume that New York law controls this dispute, and such implied consent is sufficient to establish choice of law.").

6

even when an insurer relies on limiting language in the definition of coverage instead of language in the exclusions sections of the policy because, in some circumstances, that limiting language functions as an exclusion." Id. When considering the scope of coverage afforded by an insurance policy, a court must resolve all ambiguities against the insurer. See Lavanant v. General Accident Ins. Co., 595 N.E.2d 819, 822 (N.Y. 1992) ("[W]here there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer.").

### III.     DISCUSSION

Fireman's Fund does not dispute that Kurland is an "Insured," (Plaintiff's Memorandum of Law, ECF No. 20 ("Pl.'s Mem.") at 9–10), or that the Underlying Action involves allegations of an "act, error, omission, or Personal Injury in the rendering of or failure to render Professional Services." (Pl.'s Mem. at 14–16.) Nor does Fireman's Fund dispute that Kurland has exhausted the self-insured retention with respect to the Underlying Action. (Pl.'s Mem. at 3 n.3.) As a result, the parties' motions for summary judgment turn solely on whether the Underlying Action is a "Claim" seeking "Damages", as those terms are defined in the Policy.

**A.     Whether the Underlying Action Is a "Claim"**

Under New York law, "insurance contracts are subject to the general rules of contract interpretation." J.P. Morgan, 183 N.E.3d at 447; see also Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603 F.3d 169, 180 (2d Cir. 2010). The threshold question is whether the contract terms are ambiguous, which represents a question for law for the court. See Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010). "[I]f an insurance policy is clear and unambiguous, it is to be given its plain and ordinary meaning, and courts are to refrain from rewriting the agreement." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 201 (2d Cir. 2010). Conversely, "a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d

7

Cir. 1998). Where a provision is ambiguous, the court must resolve all ambiguities against the insurer. See Allianz Ins. Co., 416 F.3d at 116 (explaining that ambiguity in an insurance policy must be "liberally construed in favor of the insured").

The Court begins its analysis with the Policy's terms. The Policy defines "Claim" to mean:

> [A] demand for money or services, or the filing of suit or institution of arbitration proceedings or alternative dispute resolution naming an Insured and alleging a[n] act, error, omission or Personal Injury resulting from the rendering of or failure to render Professional Services. Claim does not include proceedings seeking injunctive or other non-pecuniary relief.

(Policy § VIII, Endorsement No. 4.)

Kurland argues that the Underlying Action constitutes a "Claim" because it is a "demand for money" and, or in the alternative, a "suit." (Pl.'s Mem. at 13.) The phrases "demand for money" and "suit" are not defined in the Policy, so they must be interpreted "according to common speech and consistent with the reasonable expectation of the average insured at the time of contracting, with any ambiguities construed against the insurer and in favor of the insured." J.P. Morgan, 183 N.E.3d at 447.

There is a potential narrow reading of "suit," which would limit "suit" to civil proceedings. The other terms that are used to define "Claim," including "demand" and the "institution of arbitration proceedings or alternative dispute resolution," could suggest that "suit" does not encompass criminal proceedings.

However, this is not the only reasonable interpretation of the term "suit." "Suit" may refer to "[a]ny proceeding by a party or parties against another in a court of law." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, No. 09-CV-1086, 2014 WL 5420926, at *9 (S.D.N.Y. Oct. 20, 2014), aff'd, 673 F. App'x 57 (2d Cir. 2016) (citing Suit, Black's Law Dictionary (9th ed. 2009)). This definition does not limit "suit" to civil proceedings. The dictionary definition of suit includes "any proceeding" and the Policy does not expressly limit

8

"Claims" to civil actions or exclude criminal proceedings. Thus, because a "suit" may include "any proceeding," it would be reasonable for "the average insured," J.P. Morgan, 183 N.E.3d at 447, to understand that a "suit" could include criminal proceedings. Cf. Admiral Ins. Co., 2002 WL 31409450, at *4 (construing policy's failure to exclude "criminal, fraudulent, or dishonest acts" in favor of insured); In re Enron Corp. Sec., Derivative & "ERISA" Litig., 391 F. Supp. 2d 541, 570–71 (S.D. Tex. 2005) (finding criminal defense costs were covered under policy that defined "Claim" as "any demand, suit or proceeding . . . which seeks actual monetary damages or other relief").

"[H]ad [Fireman's Fund] wished to restrict its duty to defend to the standard range of covered, or possibly covered, claims, it could have done so with plainer language." Allianz Ins. Co., 416 F.3d at 116–17 (resolving ambiguity in favor of insured and holding that insurer had duty to defend); see also Dalton v. Harleysville Worcester Mut. Ins. Co., 557 F.3d 88, 93 (2d Cir. 2009) (resolving ambiguity against insurer and noting that "other insurers in New York have used forms that speak much more directly to the dispute involved here"). Fireman's Fund could have easily limited "suits" to "civil proceedings" or explicitly excluded "criminal proceedings" from the definition of "Claim," but it failed to do so. Cf. McAninch v. Wintermute, 491 F.3d 759, 772 (8th Cir. 2007) ("Had [the insurer] intended to exclude from coverage any and all costs or losses or attorneys [sic] fees arising out of or attendant to any criminal charge made against its insured, a simple declarative sentence could have been easily inserted into the policy."); In re Enron, 391 F. Supp. 2d at 570 ("The Court's research has revealed that the in cases addressing liability insurance policies' coverage of defense costs, the language of the policies standardly and explicitly states whether coverage is for civil and/or criminal costs."). Fireman's Fund does not even contest that the Underlying Action represents a "suit." Accordingly, Fireman's Fund has waived any argument that the Underlying Action is not a "suit."

9

Rather than disputing Kurland's interpretation of "suit," Fireman's Fund instead argues that defense costs and indemnification are not available because the Policy "precludes coverage for 'proceedings seeking injunctive or other non-pecuniary relief.'" (Defendant's Memorandum of Law, ECF No. 21 ("Def.'s Mem.") at 5.) This argument is premised on the sentence contained in the Policy's definition of Claim that is emphasized below:

> [A] demand for money or services or the filing of suit or institution of arbitration proceedings or alternative dispute resolution naming an Insured and alleging a[n] act, error, omission or Personal Injury resulting from the rendering of or failure to render Professional Services. <u>Claim does not include proceedings seeking injunctive or other non-pecuniary relief</u>.

(Policy § VIII, Endorsement No. 4 (emphasis added).)

According to Fireman's Fund, even assuming <u>arguendo</u> that forfeiture or restitution in the Underlying Action could constitute "Damages," the Underlying Action cannot constitute a "Claim" because the Underlying Action also seeks "non-pecuniary relief" in the form of Kurland's imprisonment. While the Court assumes that imprisonment is a form of "non-pecuniary relief," Fireman's Fund's argument fails.

First, as Fireman's Fund is relying "on limiting language in the definition of coverage . . . that functions as an exclusion," it must therefore establish that the definition of "Claim" is "subject to no other reasonable interpretation." <u>J.P. Morgan</u>, 183 N.E.3d at 448. Because the Court finds that "suit" is, at the very least, "reasonably susceptible to more than one meaning," <u>Haber</u>, 137 F.3d at 695, Fireman's Fund cannot satisfy this standard.

Second, according to Fireman's Fund's interpretation of "Claim," a civil suit that seeks both monetary damages <u>and</u> injunctive relief (or some other form of "non-pecuniary relief") would not constitute a "Claim." However, it is, at the very least, ambiguous, whether the Policy—which covers "Claims" seeking "Damages" and includes a duty to defend such "Claims"—excludes proceedings that seek <u>both</u> monetary damages and injunctive/non-pecuniary relief from the duty

10

to defend. See Imperial Cas. & Indem. Co. v. State, 714 A.2d 1230, 1240 (Conn. 1998) (holding that although policy contained "an exclusion for any action, claim or 'suit' seeking injunctive relief or class action relief," insurer still had duty to defend because "the actions in this case also contain demands for monetary damages"); cf. Jones, Foster, Johnston & Stubbs, P.A. v. ProSight-Syndicate 1110 at Lloyd's, 680 F. App'x 793, 798 n.9 (11th Cir. 2017) (indicating that, under similarly worded policy, insurer would have a duty to defend a suit that sought both pecuniary and non-pecuniary relief, but ultimately finding in favor of insurer on other grounds). Here, the ambiguous provisions of the Policy would require Fireman's Fund to defend a civil suit seeking both monetary damages and injunctive relief. The Policy is similarly ambiguous as applied to any criminal indictment that seeks both "damages" and imprisonment—a form of non-pecuniary relief. As such, the Court is not persuaded by Fireman's Fund's argument based on the limiting language concerning injunctive and non-pecuniary relief in the definition of "Claim."

**B.    Whether the Underlying Action Seeks "Damages"**

Fireman's Fund has a duty to defend Kurland if the Underlying Action seeks "Damages." The Policy defines "Damages" to mean:

> [C]ompensatory judgments, settlements or awards but does not include punitive or exemplary damages, sanctions, fines or penalties assessed directly against any Insured, the return of fees or other consideration paid to the Insured, or that portion of any award or judgment caused by the trebling or multiplication of actual damages under federal or state law.

(Policy § VIII.) The parties do not dispute that the only possible "Damages" in the Underlying Action are forfeiture and, if Kurland is convicted of any of the fraud counts in the Superseding Indictment, mandatory restitution. However, they dispute whether forfeiture and restitution fall within the Policy's definition of "Damages." Kurland argues that, "because the government may use the forfeited property to compensate the Lottery Clients for their alleged losses, and because restitution is compensatory in nature, the Underlying Action seeks, at least in part, a compensatory

11

judgment, settlement, or award constituting Damages under the plain terms of the Policy." (Pl.'s Mem. at 13.) Fireman's Fund counters that forfeiture and restitution fall within the exclusion in the definition of "Damages" for "punitive or exemplary damages, sanctions, fines or penalties" (the "Damages Exclusion"). (Def.'s Mem. at 6.) Thus, whether the Underlying Action seeks "Damages" depends on whether forfeiture and restitution are "compensatory," or whether they fall within the Damages Exclusion.

The phrase "compensatory judgment" is not defined in the Policy. Under New York precedent interpreting insurance contracts, a judgment may "serve[ ] compensatory purposes" where it is "measured by the profits wrongfully obtained and losses caused by the alleged wrongdoing." J.P. Morgan, 183 N.E.3d at 453. Similarly, dictionaries define "compensate" to mean "to recompense (for an injury)." See, e.g., Black's Law Dictionary (11th ed. 2019). As one court has observed:

> The dictionary definitions of "compensatory damages" and "relief" do not mandate that they are restricted to civil proceedings. "Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury. Damages awarded to a person as compensation, indemnity, or restitution for harm sustained by him. The rationale behind compensatory damages is to restore the injured party to the position he or she was in prior to the injury."

In re Enron, 391 F. Supp. 2d at 571 (quoting Black's Law Dictionary at 390 (West 6th ed. 1990)) (emphasis added).

Restitution undoubtedly "serves compensatory purposes." J.P. Morgan, 183 N.E.3d at 453 (discussing compensatory nature of SEC-ordered disgorgement). If Kurland is convicted of any of the fraud counts in the Superseding Indictment, the sentencing court must order "return of the property" to a victim of the offense, or "an amount equal to . . . the value of the property." 18 U.S.C. §§ 3663A(a)(1),(b)(1). Restitution would be "measured by the profits wrongfully obtained and losses caused by the alleged wrongdoing," J.P. Morgan, 183 N.E.3d at 453, and would

12

compensate the victims for the injuries they sustained. Moreover, the Second Circuit has observed that criminal restitution is utilized to "make victims of [the alleged] crimes whole." United States v. Maynard, 743 F.3d 374, 377–78 (2d Cir. 2014) (discussing restitution in criminal case). Therefore, restitution is, at least in part, "compensatory."[3]

Fireman's Fund argues that the Court should instead look to the Damages Exclusion. (Def.'s Mem. at 6.) The Damages Exclusion carves out from the definition of "Damages" any "punitive or exemplary damages, sanctions, fines or penalties." (Policy § VIII.) According to Fireman's Fund, even though restitution and forfeiture may be used to compensate victims of crimes, "forfeiture of money or property obtained illegally and restitution are vehicles of the punitive aspects of the criminal system, and are wholly outside the definition of Damages under the Policy." (Def.'s Mem. at 9.)

Before Fireman's Fund may avoid policy coverage based on this exclusion, it bears the burden of demonstrating that the Policy, "in clear and unmistakable language, exclude[s] coverage." MBIA, 652 F.3d at 165. Fireman's Fund again fails to satisfy this standard. As the New York Court of Appeals has explained, "where a sanction has both compensatory and punitive components, it should not be characterized as punitive in the context of interpreting insurance policies." J.P. Morgan, 183 N.E.3d at 449; see also Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 642 N.E.2d 1065, 1068 (N.Y. 1994). The fact that restitution also serves a punitive purpose in the context of a criminal proceeding is not dispositive. Because restitution serves, "at least in part," a compensatory purpose, Fireman's Fund has failed to establish that restitution "clearly and

---

[3] A forfeiture judgment might also constitute a "compensatory judgment." The Government seeks forfeiture by Kurland of "any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of" the fraud offenses, or property that was "involved in" offenses related to unlawful monetary transactions, "or any property traceable to such property." (Superseding Indictment at 7.) Should the Government prevail, the Attorney General may restore any forfeited property "to any victim of the offense giving rise to the forfeiture." 18 U.S.C. § 981(e)(6); see also 21 U.S.C. § 853(i)(1) (Attorney General may "restore forfeited property to victims"). However, because the Court finds that restitution constitutes a "compensatory judgment," it is unnecessary to address whether a forfeiture judgment would also be "compensatory."

13

unambiguously" falls within the Damages Exclusion. J.P. Morgan, 183 N.E.3d at 453; see also Schanker & Hochberg, P.C. v. Berkley Assurance Co., No. 2:20-CV-5361, 2022 WL 657540, at *11 (E.D.N.Y. Mar. 4, 2022) (insurance policy's use of "penalty" did not encompass statutory penalty scheme that "reflect[ed], at least in part, compensatory, nonpunitive aims," and holding that insurer had duty to defend underlying action). Accordingly, the Court concludes that the possibility of mandatory restitution represents "Damages" sought in the Underlying Action.[4]

Again, "had [Fireman's Fund] wished to restrict its duty to defend to the standard range of covered, or possibly covered, claims, it could have done so with plainer language." Allianz Ins. Co., 416 F.3d at 116–17; cf. McAninch, 491 F.3d at 772. The Court resolves any doubt regarding the scope of "Damages" in Kurland's favor and concludes that the Underlying Action seeks "Damages" as defined in the Policy.[5]

---

[4] Fireman's Fund relies heavily on Jones, Foster, Johnston & Stubbs, P.A. v. ProSight-Syndicate 1110 at Lloyd's, 680 F. App'x 793, 798 (11th Cir. 2017). That case, however, is distinguishable in two important respects. First, Jones was not decided under New York law, including the Court of Appeals' decision in J.P. Morgan. Second, Jones is factually distinguishable. The underlying action at issue in Jones was a civil contempt proceeding in which the moving party sought sanctions, including the attorney's fees incurred by the moving party as a consequence of the alleged misconduct. The policy at issue in Jones—like the Policy here—defined "Damages" as including "compensatory judgments," but excluding "punitive or exemplary damages, sanctions, fines or penalties." Jones, 680 F. App'x at 794 (emphasis added). Thus, in Jones, the civil contempt motion sought "sanctions," which were explicitly excluded under the policy. Here, the Policy does not explicitly exclude "restitution" or "criminal restitution" from the definition of "Damages." While Fireman's Fund equates criminal restitution with punitive damages, sanctions, and penalties, for the reasons discussed above, criminal restitution does not squarely fall under those categories. Absent "clear and unmistakable language," the Court cannot conclude that the Policy excludes criminal restitution from the definition of "Damages". MBIA, 652 F.3d at 165.

[5] Fireman's Fund refers in passing to several cases in which courts have held that some "liability policies do not cover costs for criminal actions, including attorney's fees, because criminal punishments do not seek damages that 'compensate' a party for injuries suffered and because criminal punishments are not 'damages.'" (Def.'s Mem. at 8 (citing In re Enron, 391 F. Supp. 2d at 570–71 (citing Potomac Electric Power Co. v. California Union Ins. Co., 777 F. Supp. 980, 983–84 (D.D.C. 1991); Stein v. International Ins. Co., 266 Cal. Rptr. 72, 75 (Ct. App. 1990); Perzik v. St. Paul Fire & Marine Ins. Co., 279 Cal. Rptr. 498 (Ct. App. 1991))). The cases to which the In re Enron court referred are all distinguishable: none applied New York law, including the Court of Appeals' decision in J.P. Morgan; none involved insurance policy provisions similar to the Claims Exclusion; and none involved insurance policies that, as here, specifically defined "damages" to include "compensatory judgments." As a result, the Court finds these cases unpersuasive.

## C. The Claims Exclusion

The Policy also contains a provision that excludes coverage for any "Claim" "[a]rising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation," while nonetheless obligating Fireman's Fund to "provide a defense of <u>such actions</u> until such time as the act is ruled either by trial verdict, court ruling, regulatory ruling or legal admission as dishonest, fraudulent, <u>criminal</u> or malicious." (Policy § VII(B) (emphasis added).)

The Claims Exclusion further supports the Court's interpretation of the ambiguous terms "suit" and "compensatory damages" to include criminal proceedings and criminal restitution judgments. If "suit" and "compensatory judgment" did not encompass at least criminal restitution proceedings, then this provision would, arguably, be superfluous. Such a reading would violate a basic principle of insurance contract interpretation that the Court "give full meaning and effect to all of [the contract's] provisions." <u>Fleisher v. Phoenix Life Ins. Co.</u>, 18 F. Supp. 3d 456, 468 (S.D.N.Y. 2014).[6] Other courts interpreting similar insurance contract provisions have applied the same reasoning to reach similar conclusions. <u>See, e.g.</u>, <u>In re Enron</u>, 391 F. Supp. 2d at 572 (explaining that similarly worded exclusion "would not be necessary if the policy did not cover defense costs for criminal actions"); <u>Admiral Ins. Co.</u>, 2002 WL 31409450, at *4 ("Because the Policy does not explicitly define Professional Services to exclude [dishonest, fraudulent, criminal or malicious acts], and because the exclusions section implies that coverage applies to such acts, the Policy must consider 'dishonest, fraudulent, criminal or malicious acts' that are performed solely as an attorney to be Professional Services. If it did not, such a provision in the Exclusions section would be superfluous and unnecessary.").

---

[6] The Court acknowledges that there may be circumstances in which a non-criminal proceeding "arises out of" allegations of criminal activity. However, the Court nonetheless finds that "suit" is susceptible to more than one meaning, and "where there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer." <u>Lavanant</u>, 595 N.E.2d at 822.

Fireman's Fund argues that the Court should not consider the Claims Exclusion in its analysis because "insurance coverage cannot be created through an exclusion." (Def.'s Mem. at 9.) This argument misses the mark: the Court's analysis "does not attempt to create coverage out of an exclusion; it merely reads two provisions of the Policy together to determine the correct interpretation of what is covered." Admiral Ins. Co., 2002 WL 31409450, at *4.

**D.    Public Policy**

Finally, Fireman's Fund argues that, "[a]side from the contract interpretation analysis, it would be against public policy to grant Plaintiff insurance coverage under his law firm's liability policy for alleged criminal behavior," because "[p]roviding insurance coverage for allege[d] criminal behavior would arguably incentivize the bad behavior that the criminal justice system in this country seeks to prevent." (Def.'s Mem. at 11.) The plain language of the Policy belies this argument. Although the Claim Exclusion precludes coverage for any "Claim" "[a]rising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation," it nonetheless obliges Fireman's Fund to "provide a defense of such actions until such time as the act is ruled either by trial verdict, court ruling, regulatory ruling, or legal admission as dishonest, fraudulent, criminal, or malicious." (Policy § VII(B).)  Fireman's Fund's duty to defend is distinct from its duty to indemnify. As a result, the Court may find that Fireman's Fund must provide a defense to Kurland in the Underlying Action even if it ultimately need not indemnify him. See Admiral Ins. Co., 2002 WL 31409450, at *4–5 (explaining that, through similar language, the parties "apparently contracted out of the common law rule that . . . there is no duty to defend claims that an insurer will not eventually have to indemnify").

Fireman's Fund also cites New York regulations related to legal services insurance as evidence of a "regulatory scheme [that] is consistent with the public policy that circumstances like Plaintiff's criminal proceeding are not covered by insurance." (Def.'s Mem. at 11.)  However,

16

Fireman's Fund nowhere demonstrates that these regulations apply to the Policy or this dispute. The Court is similarly unpersuaded by Fireman's Fund's "fortuitous event" argument. (Id.)

Accordingly, the Court concludes that the Underlying Action represents a "Claim" seeking "Damages," and that Fireman's Fund must therefore "provide a defense" to Kurland in the Underlying Action until such time Kurland's alleged acts are "ruled either by trial verdict, court ruling, regulatory ruling, or legal admission as dishonest, fraudulent, criminal, or malicious." (Policy § VII(B).)

## IV.     CONCLUSION

For the foregoing reasons, Kurland's motion for partial summary judgment on Count I of the Complaint is GRANTED. Fireman's Fund's motion for summary judgment is DENIED. Fireman's Fund is ORDERED to immediately pay, on a current and ongoing basis and up to the Policy's Limit of Liability, Kurland's defense costs in the Underlying Action.

**SO ORDERED.**

Dated: June 29, 2022
Central Islip, New York

                                          /s/   (JMA)
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE